## George A. Twibill v. The Lombard and South Streets Passenger Railway Company and the Electric Traction Company, Appellants.

*Vendor and vendee—Way—Implied covenant running with land.*

Where a street is laid out by the grantor himself over land which he sells in lots, there is necessarily an implied covenant that he will open it at least for the use of his grantee. Such a covenant runs with the land.

*Deed—Reference to street or way—Equitable grant of right of way.*

A description referring to a street laid out or to be laid out by the grantor, ordinarily operates as an equitable grant of the right of way and binds privies in title with notice.

*Right of way arising by deed—Denial of title—Abandonment.*

When a right of way is claimed by grant, such right cannot be extinguished by disuse or lost by non-user unless there be a denial of title or other act, on the part of the adverse party, to quicken the owner in the assertion of his right, and an abandonment of a servitude created by deed cannot be inferred from non-user by grantee.

*Acceptance of a street by city not necessary to sustain grant in a deed.*

It is not necessary in order to preserve the rights of vendees to a proposed street mentioned in a deed that the street or way should be accepted by the city, or that it should be graded, paved or otherwise improved.

*Easement—Right of way—Obstruction—Trespass.*

A successor in title to a grantor of a right of way by deed, will not be justified in building over a street laid out by the common grantor, thereby obstructing the right of way vested by deed in other grantees abutting on the proposed street. Infrequent use, non-use or failure of the city to accept and improve the street will not be defenses to an action of trespass brought by such other grantee vested with a right of way in said proposed street.

Argued October 16, 1896. Appeal, No. 130, Nov. T., 1896, by defendants from judgment of C. P. No. 4, Phila. Co., Dec. T., 1894, No. 1133, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ. Affirmed.

Trespass for obstruction of right of way.

The defendants submitted the following points:

1. That under all the evidence in this case the plaintiff cannot maintain his action against the defendants.

2. That under all the evidence in this case the verdict must be for the defendants.

3. That under all the evidence in this case, there is no covenant or undertaking shown or liability imposed upon the defendant company to permit the twenty-five feet wide street, called Watts street, to be opened through its property.

4. That there is no evidence in this case to show any duty or obligation imposed upon defendants to refrain from using or building upon any portion of its property.

5. That under all the evidence in this case the defendant company has the right to build across its lot, without regard to the claim of the plaintiff to have an easement or right of way for the said twenty-five feet wide street, called Watts street, across the defendants' property.

6. There is no evidence that Watts street was ever laid out on the city plan, and the ordinance forbids the opening of a public street less than thirty feet wide. The plaintiff has therefore no right to a public street twenty-five feet wide, and can sustain no action for not opening such a street.

7. From all the evidence it appears that Watts street was never opened or laid out, and therefore the defendants cannot have been guilty of a trespass in obstructing a street which has never existed.

8. If the jury find that the defendants and Markoe, under whom it claims, had and maintained open, notorious, and adverse possession of the strip of ground twenty-five feet wide, being part of defendants' lot which would have been part of Watts street if opened, then the plaintiff cannot recover.

9. In no event can the plaintiff recover any more than nominal damages.

The court charged the jury as follows : " In this case all that I need say to you is that you may render a verdict in favor of the plaintiff, which will be nominal."

Other facts sufficiently appear in the opinion of the Superior Court.

Verdict for plaintiff for $1.00.   Defendants appealed.

*Errors assigned* were, (1–8) refusal of defendants' points, reciting same; (9) charge of the court; (10) in overruling the objection of the defendants to the admission of the evidence of the plaintiff, George A. Twibill, who was offered by his counsel as a witness to prove the erection of a stable on the defendants' premises, cutting off twenty-five feet, (11) in overruling the objection of the defendants to the admission of the following testimony given by George A. Twibill: " Q. What is the effect of closing Watts street upon your improving your lot?   Q. Are you or not prevented from building?   A. Yes, sir; nobody will buy any lots from me while the stable is there, and I pay $2,500 taxes on it for the last five years—$500 a year; in this season it is $700.   Then I paid interest on a mortgage, $1,500 a year; and they are going along making money while I am paying these taxes."

*Wm. Henry Lex* and *George P. Rich*, for appellants.

*Henry Budd* and *Thomas R. Elcock*, for appellee.

OPINION BY WICKHAM, J., February 16, 1897 :

This controversy relates to a way, called by the plaintiff Watts street, which he alleges is appurtenant to certain land owned by him in the city of Philadelphia.   His right depends largely on the construction to be given certain words used in conveyances made by one James Bond, who was the predecessor in title of all the parties to the litigation.

In 1854, Bond owned in fee simple a block of ground bounded north by Snyder avenue, east by Thirteenth street, south by Jackson street, and west by Broad street. By deed of March 4, 1854, recorded June 21st of the same year, Bond and his wife conveyed to Hittie Markoe a part of this land, describing it as follows: " All that certain lot or piece of ground situate at the southeast corner of Broad street and Snyder street, in the late district of Moyamensing, now within the city of Philadelphia. Containing in front or breadth on the said Broad street one hundred and twenty feet, and extending in length or depth eastward of that width (crossing a certain new street fifty feet wide, laid out by the said James Bond and intended to be opened for public use, at the distance of two hundred and sixty-five feet eastward from and parallel with the said Broad street, and also crossing two other new streets, each twenty-five feet wide, laid out by the said James Bond and intended to be opened for public use, one of them at a distance of one hundred and fifty feet eastward from and parallel with the said Broad street, and the other of them at the distance of eighty-seven feet six inches westward from and parallel with Thirteenth street) five hundred and fifteen feet to the west side of the said Thirteenth street. Bounded northward by the said Snyder street, southward by ground granted to Joseph Maitland, eastward by the said Thirteenth street, and westward by said Broad Street."

The fifty foot new street mentioned in this description afterwards became and now is, Juniper street, on the city plan. Watts street is the twenty-five foot street one hundred and fifty feet east of Broad street, and running parallel therewith.

Hittie Markoe died seized of the lot above described, and by deed of December 15, 1874, recorded December 30, 1874, her executors conveyed to the Lombard and South Street Passenger Railway Company, under which the other defendant seems now to claim, a portion of said lot fronting one hundred and seven feet six inches on Broad street, and extending back of the same width along Snyder avenue to Thirteenth street. The conveyance contains, by way of recital a full description of the whole Markoe lot, including the street in dispute. It will thus be seen, that the purchaser from Hittie Markoe's executors had full notice as to this street.

Returning to Bond, we find that by deed dated April 4, 1854,

recorded February 19, 1855, he and his wife conveyed to Joseph Maitland another lot adjoining the one sold Hittie Markoe a month earlier, and described it as follows : " Situate on the east side of Broad street, at the distance of 120 feet southward from the south side of Snyder avenue, in the district of Moyamensing, in the county of Philadelphia, containing in front or breadth on the said Broad street 120 feet, and extending in length or depth eastward of that width, between lines parallel with the said Snyder avenue (crossing a certain new street 50 feet wide, laid out and opened by the said James Bond for public use, at the distance of 265 feet eastward from and parallel with the said Broad street, and also crossing two other new streets, each 25 feet wide, laid out and opened for public use by the said James Bond, one of them at the distance of 150 feet eastward from and parallel with the said Broad street, and the other of them at the distance of 87 feet 6 inches westward from and parallel with Thirteenth street, and extending from Jackson Street to McKean street), 515 feet to the west side of the said Thirteenth street. Bounded northward and southward by other ground of the said James Bond, eastward by the said Thirteenth street, and westward by the said Broad street." The description in the Markoe deed indicates, that Maitland must have had at least an equitable title to his lot prior to March 4, 1854.

By mesne conveyances, all duly recorded, and in each of which the street under consideration is mentioned as having been actually " laid out and opened for public use " by the said James Bond the lot last mentioned finally vested in Charles L. Borie, whose executors and trustees, by deed dated April 24, 1890, recorded May 23, 1890, conveyed to the plaintiff that part of the lot lying west of Juniper street. This deed very briefly describes the land granted " together with all and singular the improvements, streets, alleys, passages, ways, waters, watercourses." Watts street is not specifically mentioned or referred to, nor was it necessary, looking at the plaintiff's rights, that it should be.

Again going back to Bond, we find that by deed of even date with that made to Maitland, and recorded August 30, 1854, Bond and wife granted to John Seiser, Jr. a lot, part of the said larger parcel, having a front of forty feet on Broad street

and extending back of the same width to Thirteenth street, and described the street in dispute as having been "laid out and opened by the said James Bond for public use." All of this lot west of Juniper street finally vested in the plaintiff, by deed from the Thirteenth and Fifteenth Streets Passenger Railway Company, dated April 27, 1893, and recorded May 3d of the same year. The words last above quoted are found in all the mesne conveyances, five in number and duly recorded, between Seiser and the company. In the company's deed to the plaintiff, the disputed street is described as "a new street laid out and opened by James Bond for public use, at the distance of 150 feet eastward from and parallel with said Broad street."

In addition to the two lots already spoken of, the plaintiff is the owner of another, adjoining the same, one hundred and twenty feet wide on Broad street, and extending of the same width to Juniper street, being the west end of a lot conveyed by Bond and wife to Harry Ingersoll, by deed dated May 11, 1854, recorded May 29, 1854, and granted to the plaintiff by Ingersoll's widow, by deed dated April 11, 1891, recorded April 16 of the same year. Each of these deeds refers to the street in question, as laid out by the said James Bond and intended to be opened for public use.

Watts street has never been physically improved, or defined by fences or buildings, nor have the city authorities done anything towards accepting it. Two months after the plaintiff purchased his first lot, the defendants built a stable across the street, thus completely obstructing it, and, from a business standpoint making it impracticable for the plaintiff to subdivide the land and sell it in smaller lots, as he had intended doing.

It is not necessary, in determining the plaintiff's right to the way, to go outside of his first purchase, because if the streets were appurtenant to the land then bought, he was entitled to a verdict. The fact, too, that the city never adopted or recognized the street has no effect on the plaintiff's right. This suit is between private parties, claiming under the same predecessor in title, who, it is alleged, established a right of way over his own land for the benefit of himself and those who might follow him in the ownership of different parts thereof. Whether the public have the right to insist on the opening of Watts street as a

public highway, is a matter of no importance here. As Mr. Justice GREEN says in Opening of Brooklyn Street, 118 Pa. 640: "If it be a street laid out by the grantor himself over land which he sells in lots, there is necessarily an implied covenant that he will open it at least for the use of his grantees." Bond's grantees and those holding under them are alone interested in the present proceedings. It is a well known legal principle, that a description referring to a street laid out or to be laid out by the grantor, ordinarily operates as an equitable grant of the right of way and binds privies in title with notice.

In Bombaugh v. Miller, 82 Pa. 203, a well considered case, the plaintiff sued as has the plaintiff here, in tort for obstruction of his right of way claimed by grant, it was held, after a review of numerous authorities, that such a right cannot be extinguished by disuse or lost by nonuser unless there be a denial of the title or other act, on the part of the adverse party, to quicken the owner in the assertion of his right, and that an abandonment of a servitude, created by deed, cannot be inferred from rare user by the grantee. In Spackman v. Steidel, 88 Pa. 459, a case strongly relied on by the appellant, and in its dicta not unfavorable to him, it is not clear that anything more was really decided than that an actual, open, uninterrupted, uncontested, adverse obstructing of the way by fences and buildings for thirty-five or forty years destroyed the plaintiff's title thereto, the court saying, "After this great lapse of time, we think the present action cannot be sustained." It appeared, moreover, in that case, that no possession of the way was ever given or taken under the deed.

In the present case, while the evidence outside of the deeds is meager, we think it is sufficient to justify the inference, that until within five years before suit brought, the plaintiff and his predecessors in title could and we may presume did, without hinderance, go whenever they chose, between Jackson street and Snyder avenue, along and over the now disputed way. According to the uncontradicted testimony of John H. Dye, one of the witnesses for the defense, that part of the block over which Watts street extends was at the time of the trial still unimproved, save by the defendants' stable and a fence. Evidently the fence was of comparatively recent origin, as the witness says the lot had been used as a place of deposit for rubbish, showing that it

must have been open and accessible, and the defendants' counsel stated and offered to prove that the fence, which was made out of second-hand material, was built by the plaintiff, after his purchases, to enclose the ground for base ball games.

We then have this state of facts, looking at the plaintiff's rights as resulting from his earliest purchase, and not considering his title through Seiser, which, of course, would make his case still stronger. First, the deed from Bond and wife to Hittie Markoe, under and through whom the defendants claim, wherein the way is in effect described as actually laid out and existing and intended to be opened for public use. As to its location, it can and always could be ascertained by the most unskilled person capable of measuring with a tape line. It is only necessary to measure from Broad street eastwardly one hundred and fifty feet along Jackson street, and the same distance from Broad street in the same direction along Snyder avenue, and then stretch a line from one of the points thus found across the lot to the other. This line will indicate the western boundary of Watts street. Second, the deed from Bond and wife to Maitland, made one month after the Markoe conveyance, in which the way is described as then, "laid out and opened by the said James Bond for public use;" followed by the mesne conveyances down to and including the deed to Borie, all containing the same words, and the deed from Borie's executors to the plaintiff, in which all streets, alleys, passages and ways were granted as appurtenances. Whether we consider Bond as having in the Markoe deed retained title to the land occupied by the way in question, subject to an easement in his vendee, or as having granted the fee in the land covered by the same, reserving to himself the right to fully open the street thereafter and dedicate it to the widest use, matters not, because, in either event, he was master of the situation. That he exercised his right, if the latter of the two views be correct, only a month later by the deed to Maitland, which was recorded within a year after its date, cannot be disputed. Third, we have the rights of the plaintiff and his predecessors in title undenied by word or act, until after the plaintiff purchased the Maitland lot, together with the fact, inferable from the uncontradicted testimony offered in behalf of the defense, that up to the same time they could and did use the ground, set apart for

the street, on the few occasions when they needed to do so. The lots were probably nearly all street until the defendants put up the long stable complained of. It was not necessary, in order to preserve the rights of the holders of title under Bond, that the street or way should be accepted by the city. or that it should be graded, paved, or otherwise improved. While it is not a Philadelphia street, it is a way, lawfully created by the original owner of the land, and of such a character that every abutting lot owner can insist, as a matter pertaining to his own right, that it may be used by the public, if they see fit.to travel it.

The contention of the defendants, that the mention of the way, by Bond in his conveyances, should be regarded as in the nature of a description merely, is untenable. As a description, it would be needless, confusing, and absurd. Bond had a purpose of his own to serve in laying out and opening the streets through the block. It is not hard to see that by doing this, he expected to obtain better prices for the various subdivisions of the block, which he might sell from time to time, and that he probably succeeded in doing so.

The plaintiff finds part of his land almost valueless to him, unless Watts street is kept open. It is not denied that many of his lots will be practically unsalable. In our opinion, he was entitled to sustain his action, and the learned trial judge committed no error in so instructing the jury.

Judgment affirmed.