393 A.2d 486

**Frank J. SABADOS and Betty S. Sabados**

v.

**Alice P. KIRALY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 11, 1977.

Decided Oct. 20, 1978.

Blair V. Pawlowski, Ebensburg, for appellant.

Robert M. Keim, Somerset, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PER CURIAM:

The plaintiffs in this equity proceeding seek to compel defendant to remove a barricade from a roadway running over defendant's land. Plaintiffs claim a prescriptive right to use the roadway to get from their land to the public

highway. Defendant contends that plaintiffs' rights have been terminated by abandonment.

The lower court found for plaintiffs, concluding that: (1) the evidence showed mere nonuse and not abandonment; (2) a granted easement may only be lost by intentional abandonment, or adverse use for the prescriptive period by the servient tenement; and (3) prescriptive easements should be treated similarly and thus cannot be lost by nonuse.

We agree, and affirm on the following excerpts from the opinion of the court below.

"It is well established in Pennsylvania law that in order to show an abandonment of a right-of-way or easement created by deed, the evidence must clearly show some conduct on the ground by the holder of the right-of-way which manifests that he *intended* to abandon and give up permanently his right to use it. Such conduct must consist of some *affirmative act* on his part which renders use of the easement impossible, or of some *physical obstruction* of it by him in a manner that is inconsistent with its further enjoyment. Mere nonuse of the right-of-way by its holder, no matter how long continued, cannot manifest an intention to abandon the right, because there is no legal obligation upon the right-of-way owner to use it in order to keep his title to it. *Hatcher v. Chesner,* 422 Pa. 138 [221 A.2d 305].

"In the present case, there has been no use of the right of way for a long time, although it is not clearly shown for how long, according to some of the testimony, use of the right-of-way by the [prior] owners of plaintiffs' land ceased some time in the 1950's, that is, for a period of at most 18 years before the suit was filed in 1968; some other testimony says that use ceased in the late 1940's, which if accepted might extend the nonuse period to more than 21 years depending upon the exact year in which use ceased. Defendant has barricaded the road since 1953 when she acquired her property, a period of approximately 15 years before the suit was filed. But, as already stated, mere nonuse however long extended cannot produce abandonment of a granted easement.

"Defendant argues that permitting the trees and brush to grow up on the right-of-way area, from her house through the woods back to plaintiffs' property line, during the period of nonuse, is an 'affirmative act' by the holders of the right-of-way rendering its use impossible, and is an obstruction thereof by the right-of-way owner inconsistent with further use or enjoyment of the right-of-way, evidencing an intention to abandon it. This contention is impossible to accept. Allowing brush and saplings to grow on the right-of-way area which runs through the woods is not an act of active or affirmative character; instead, the growth results from merely doing nothing. These circumstances do not involve an affirmative act or placement of a physical obstruction or barrier, as is legally required for abandonment of a granted right-of-way, as comparison of this case with other decided cases shows.

"In *Hatcher v. Chesner,* supra, the right-of-way holder '. . . planted or permitted a tree to grow on the land now owned by plaintiff which obstructed use of the easement to a material extent. Further, the same parties placed, or permitted to be placed, a bar across the doors of the garage serving as the only entrance to the easement or right-of-way. These acts, in our opinion, were not mere inaction, but rather affirmative acts on the part of plaintiff and his predecessor in title, which were sufficiently inconsistent with further use of the easement to constitute an abandonment thereof and to bring the issue squarely within the rule of *Eagan v. Nagle,* [378 Pa. 206, 106 A.2d 222] supra.' (143)

". . . [T]he crucial feature of the *Hatcher* case is the purposeful barring of the right-of-way entrance showing an intention on the part of the right-of-way holder to close it, give it up and abandon it, and the obstructing tree merely added to the barricade intentionally created. In the present case, none of the owners of plaintiffs' land ever intentionally barricaded the right-of-way. In this case, growth of brush and small saplings in the roadway through the woods was but the natural closing in of nature upon an unused road,

not the affirmative or intentional obstruction of the way by the owners of plaintiffs' land. The character and size of the overgrowth of brush and small saplings in this case suggests that it has continued for only a few years, considerably less than 21 years prior to 1968. On the other hand, in the *Hatcher* case, the obstructing tree was 35 years old and was allowed to grow in the right-of-way, directly obstructing it.

"Other facts in the present case strongly point to the conclusion that the right-of-way went unused, not because it [was] not wanted, but because the whole of plaintiffs' land also was unused for many years. The house, barn and other out buildings were gone so long before that the witnesses could not say when. And the land was thereafter used only for farming and tree growing up until the late 1940's or into the 1950's, when all activity ceased, and no use has been made since of any part of plaintiffs' land. That land is not crossed or adjoined by any public road, so that it is landlocked and is dependent upon a right-of-way across the land of a neighbor. There is a possible way out, other than the one in suit, but the record shows that use of the other road by plaintiffs' predecessors was both occasional and permissive, whereas the way over defendant's land was the one regularly and customarily used. It would be unreasonable to say, as the defense urges, that the owners of plaintiffs' land, in not using the only right-of-way appurtenant to it, intended to abandon their right to it, and thereby to lock themselves in, any more than they intended by their nonuser of the soil to abandon their title to it.

"There being neither an intention to abandon manifested by an affirmative obstructing act on the part of the right-of-way holder, and no adverse possession for the required period by defendant, there is no legal abandonment or extinguishment of the right-of-way within the rules laid down in *Hatcher v. Chesner,* supra.

"The foregoing principles of law are expressly stated in the authorities to be applicable in the case of an easement *created by deed,* whereas the easement in this case was created by prescription. Does this distinction alter the basic principles above discussed? We think not.

"In Pennsylvania, we have no direct decision on the subject, but the following dictum appears in *Nitzell v. Paschall,* 3 Rawle 76, 81 (1831):

'It is certainly true that a right of enjoyment may be lost in the same way it has been gained, and when acquired by an adverse possession for 20 years, it may, I should suppose, be lost by *non user* for the same period. Where, however, it has been acquired by grant, it will not be lost by *non user* in analogy to the statute of limitations, unless there were a denial of the title or other act on the adverse party to quicken the owner in the assertion of his right.'

"See also *Bombaugh v. Miller,* 82 Pa. 203, 209; Summary of Pennsylvania Jurisprudence, Real Property II, Section 45.1. But apparently the Pennsylvania appellate courts have not had occasion squarely to decide for or against this dictum. Our conclusion is that easements created by grant and those created by prescription should be equated as respects the requirements for abandonment of either type. That conclusion is grounded upon the following considerations:

"(1) In Pennsylvania, a prescriptive easement is not merely an 'unopposed, continuous trespass,' as in *McDonald v. Sargent,* supra. A prescriptive easement in Pennsylvania is regarded as a 'full and unqualified grant.' *Loudenslager v. Mosteller,* 453 Pa. 115, 117; [307 A.2d 286] *Bognar v. Gnagey,* 29 Somerset Legal Journal 278. Adverse user for the required period does not merely bar the owner's *remedy* to recover his land adversely used; it transfers to the adverse user a *title* which cannot thereafter be disputed. *Loudenslager v. Mosteller,* supra; *Bognar v. Gnagey,* supra; *Tarrity v. Pittston,* 16 [Pa.]Commonwealth 371, 375. [328 A.2d 205]

"(2) One of the strongest of public policies expressed in our statutory law and judicial utterances is that in favor of allowing possessory titles and interests in land which have been long-settled, to remain so settled, for the peace and repose of society, notwithstanding that such possessory titles may not conform to paper titles. 'The rule of presumption, when traced to its foundation, is a rule of convenience and

policy, the result of a necessary regard to the peace and security of society.' *Foulk v. Brown,* 2 Watts 209, 215; *Carter v. Tinicum,* 77 Pa. 310, 316; see also *Berzonski v. Holsopple,* supra, [28 Som. 342] 358, 359, 364; [2] C.J.S. Adverse Possession, Section 2, page 646.

"(3) Consistent with our concepts of private property, is the notion that an important attribute of private ownership is the *right not to use* one's property, as one sees fit, without thereby losing ownership. See *Hatcher v. Chesner,* supra, 142, quoting from *Lindeman v. Lindsey,* 69 Pa. 93, 100. Accordingly, mere nonuse is but the exercise of ownership, not its surrender.

"(4) Loss of title for mere nonuser, or an unintentional 'abandonment,' is in substance a forfeiture, which is an abhorrence to the courts and is greatly disfavored. *Hatcher v. Chesner,* supra, 142.

"(5) The dictum of *Nitzell v. Paschall,* supra, appears to be a logical nonsequitur, in saying: 'It is certainly true that a right of enjoyment may be lost in the same way it has been gained, and when acquired by adverse possession  .  .  . it may, I should suppose, be lost by nonuser for the same period.' The major premise, that a right of enjoyment acquired by adverse user may be lost in the same way it was gained, is a sound proposition. But it does not follow therefrom that 21 years of nonuser is the legal equivalent of 21 years of adverse user. The more logical conclusion from the major premise is that an easement gained by adverse user by the dominant tenement owner may be gained back by adverse user by the servient tenement owner. That is a perfectly valid logical and legal proposition. Compare *Philadelphia v. Philadelphia,* 303 Pa. 422, 429 [154 A. 492]; *Mitchell v. Bovard,* 279 Pa. 50, 54 [123 A. 588].

"All of the foregoing considerations are  .  .  . [as] .  .  . applicable to prescriptive easements as they are to granted easements, and lead us to conclude that any discrimination between them as respects the requirements for their extinguishment is irrational, and that as a matter of sound legal theory, public policy, and logic, a prescriptive easement

can be abandoned only in the same way as a granted easement, that is: by affirmative and obstructive conduct showing an intention to abandon, or by adverse use for the prescriptive [period] by the servient tenement, under *Hatcher v. Chesner,* supra.

"It may be observed here that, even though we were to accept the dictum of *Nitzell v. Paschall,* supra, and hold that a prescriptive easement may be abandoned by mere nonuser, irrespective of intention, the defendant could not succeed. Such nonuser would have to be continuous for at least 21 years. See *Crozer v. Cemetery Association,* 13 Del. 492 and *Eschleman [Eshleman] v. Martic,* 152 Pa. 68, 76–7 [25 A. 178]. In this case, as pointed out above, defendant has not carried her burden of proving *clearly* that the nonuser in this case persisted that long prior to the filing of this action."

Order affirmed.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.