## Antrobus v. Slawski

*John A. VanLuvanee,* for plaintiffs.
*Charles I. Richman,* for defendants.

BORTNER, *J.,* June 30, 1982—Plaintiffs own a wooded lot that is not bounded by a public road. Since the 1930's plaintiffs and their predecessors in title have used a "lane" across defendants' property for ingress and egress. They have brought this action to quiet title in order to establish their ownership of a prescriptive easement across defendants' property and to enjoin defendants from interfering with the easement.

## FINDINGS OF FACT

1. Plaintiffs Albert Kirby Antrobus and Patricia Krier Antrobus are the owners of a tract of land located on Jericho Mountain in Upper Makefield Township, Bucks County, Pennsylvania containing approximately 9.8 acres of land (hereinafter "Antrobus property"). Said property is identified as Bucks County Tax Map Parcel 47-4-34.

2. The Antrobus property is located approximately 1700 feet from Thompson Mill Road, the nearest public road. The property does not front on any public street or highway.

3. The Antrobus property is and was at all relevant times a wooded lot without either a permanent or temporary dwelling.

4. The Antrobus property was formerly owned by plaintiff Albert Kirby Antrobus's parents, Albert Antrobus and Eileen Antrobus, who acquired the property by deed dated November 20, 1930, recorded in Bucks County Deed Book 598 at page 70.

5. Albert Antrobus died on November 30, 1956.

His wife, Eileen Antrobus, became sole owner of the Antrobus property at that time.

6. Eileen Antrobus died on April 16, 1969 leaving a will dated February 3, 1965, naming plaintiff Albert Kirby Antrobus as sole executor.

7. Plaintiff Albert Kirby Antrobus as executor under the will of Eileen Antrobus conveyed the Antrobus property to himself as sole heir under the will by deed dated May 24, 1971 recorded in Bucks County Deed Book 1999 at page 453.

8. On July 18, 1977 the property was coveyed to plaintiffs Albert Kirby Antrobus and Patricia Krier Antrobus by deed recorded in Bucks County Deed Book 2249 at page 975.

9. From 1930 to the present the sole means of access to the Antrobus property has been by means of a lane which begins at Thompson Mill Road and which until recent improvements to the lane were made by subsequent owners of the adjacent property, defendants Walter X. and Desiree Slawski, terminated on the Antrobus property.

10. Defendants Walter X. Slawski and Desiree Slawski are the owners of a tract of land sharing a common boundary on the northeast side of the Antrobus property. The Slawski property is identified as Bucks County Tax Map Parcel No. 47-4-43-2.

11. Defendants Slawski are the owners in fee of the "land" over which plaintiffs Antrobus claim an easement by prescription. The lane is a strip of land approximately 17 feet wide and extending approximately 1716 feet.

12. Defendants Slawski acquired title to Tax Map Parcel N. 47-4-43-2 from Mary Charles Speece by deed dated June 30, 1978 recorded in the Office of the Recorder of Deeds for Bucks County in Deed Book 2291 at page 649.

13. Mary Charles Speece and her now deceased

husband, B. Frank Speece, had previously acquired title to the Slawski property by deed dated August 26, 1957 recorded in Bucks County Deed Book 1357 at page 553.

14. Since acquisition of the property in 1978 defendants Slawski have made substantial improvements to their property including substantial sums to improve the condition of the lane.

15. From the time Albert and Eileen Antrobus acquired title to the Antrobus property on November 20, 1930 through the date of Albert Antrobus' death in 1956, Albert Antrobus drove a horse and wagon along the lane to the Antrobus property a minimum of eight times a year for the purpose of hauling trash onto the land and removing timber and/or firewood. During the same period of time Albert Antrobus walked along the strip of land in question on at least a weekly basis.

16. Eileen Antrobus also made occasional visits to the property during the years 1930 through 1956.

17. From 1956 through the date of her death on April 16, 1969 Eileen Antrobus visited the property on a regular basis an average of one (1) time per month utilizing the land for access to the property.

18. James O. Antrobus, a cousin of Albert Antrobus, regularly drove a truck and other motor vehicles up the lane to the Antrobus property in the early 1950's.

19. From the time of Albert Antrubus' death in 1956 to the time of Eileen Antrobus' death in 1969 James Antrobus, at the request of Eileen Antrobus, walked or drove up the lane approximately one time per month and at least ten times per year. Eileen Antrobus requested that James Antrobus use the lane because she believed that it was necessary in order to retain her right to use the lane.

20. James Antrobus worked for Albert Antrobus

in the early 1930's and during that time assisted Albert Antrobus in the maintenance of the lane.

21. At all times since the early 1930's, Albert Antrobus, Eileen Antrobus, or plaintiffs regularly caused the lane to be posted with "No Hunting" signs in addition to posting the Antrobus property. These "No Hunting" signs were posted in the center of the lane at Thompson Mill Road and at another point approximately 500 feet up the lane from Thompson Mill Road.

22. From 1930 until the date of his death in 1956 Albert Antrobus either personally or with the assistance of plaintiff Albert Kirby Antrobus, James Antrobus, and (in the early 1950's) Thomas Antrobus, performed maintenance on the lane. The maintenance activities included the installation of pipes under the lane to facilitate drainage, filling of ruts in the wagon tracks with stones, and clearing of weeds and undergrowth.

23. From 1930 through 1956 there were always evidence of two wheel tracks readily visible on the lane.

24. Before defendants Slawski purchased the Slawski property in 1978 the only persons who performed any maintenance activity on the lane were members of the Antrobus family.

25. The purpose of the maintenance performed by the members of the Antrobus family on the lane was to facilitate the use of the lane as the sole means of access to the Antrobus family.

26. In the 1970's the lane was not maintained and the Antrobus family allowed grass to grow up on it in order to discourage others from using it.

27. Slawski's predecessor in title, Mary Charles Speece, was aware at the time she and her husband acquired title to the Slawski property in 1957 of the

fact that Albert Antrobus and Eileen Antrobus used the lane for access to the Antrobus property.

28. Mary Charles Speece never discussed with the Antrobus family the use of the lane; never granted permission to the Antrobus family to use the lane; and was never asked by the Antrobus family to use the lane.

29. Mr. and Mrs. Dyer, owners of property in the vicinity of the Antrobus property, requested of Albert Antrobus permission to use the lane for access to Jericho Mountain for purposes of horseback riding.

30. At no time since 1930 has the use of the land by plaintiffs and their predecessors in title been interrupted by defendants Slawski or their predecessors in title.

31. As of November 20, 1951, Albert Antrobus and Eileen Antrobus had used the lane for a period of 21 years and this use by their heirs, successors or assigns has continued to the present time.

## DISCUSSION

It is well established that in order to create a prescriptive easement plaintiff must show that his use of the land has been adverse, continous, uninterrupted, open and notorious for 21 years: Keefer v. Jones, 467 Pa. 544, 359 A. 2d 735 (1976); Boyd v. Teeple, 460 Pa. 91, 331 A. 2d 433 (1975); Loudenslager v. Mosteller, 453 Pa. 115, 307 A. 2d 286 (1973).

A use is adverse where plaintiff uses the easement whenever he chooses without permission or objection from the owner: Loudenslager v. Mosteller, supra; Tarrity v. Pittston Area School District, 16 Pa. Commonwealth Ct. 371, 328 A. 2d 205 (1974), final decree entered 18 Pa. Commonwealth

Ct. 175, 335 A. 2d 839. Moreover, once plaintiff has shown that he has used the easement at will and without objection from the owner, the burden is on the land owner to show that the use was permissive: Loudenslager v. Mosteller, supra; Stiegelman v. Pa. Yacht Club, 432 Pa. 111, 246 A. 2d 116 (1968); Steel v. Yocum, 189 Pa. Superior Ct. 522, 151 A. 2d 815 (1959).

In the instant case, it is clear that plaintiff and his predecessors in title used the lane at will since the early 1930's to cross defendant's property in order to gain access to their wooded lot. At no time was permission asked or given by defendant and his predecessors in title.

Defendants argue that the use was not adverse even though permission was not expressly given. They assert that permission was implied in as much as the use was allowed by defendants and their predecessors in title as a neighborly accommodation: Shinn v. Rosenberger, 347 Pa. 504, 32 A. 2d 747 (1943). The Shinn court makes clear, however, that the use is not adverse only when the accommodation is mutual, i.e., where both the user and the owner are benefited by the arrangement. In the instant case, there was no mutual benefit resulting from plaintiff's use of the lane.

We conclude that defendants have failed to meet the burden of proving permission in response to plaintiff's showing that the use was at will and without objection.

Plaintiffs have also shown that their use was continuous. In order for an adverse use to be continous it need not be constant. Rather, continuity refers to a "'settled course of conduct indicating an attitude of mind on the part of the user or users that the use is the exercise of a property right." Keefer v. Jones, 467 Pa. 544, 548, 359 A. 2d 735, 737 (1976).

See Restatement of Property, Servitudes §459 (b). Beginning in November, 1930 when Albert Antrobus, plaintiff's father and predecessor in title, purchased the property until his death in 1956, Albert Antrobus used the lane as the sole means of ingress and egress to his property. He walked the lane weekly and used a horse and wagon to haul trash to and timber from his wooded property. Furthermore, he maintained and improved the lane. Not only did he keep it clear of brush and weeds but he put down stones to improve traction and installed drainage pipes.

In view of these facts we are satisfied that Albert Antrobus' use of the lane was a "settled course of conduct indicating an attitude of mind . . . that the use is an exercise of a property right." He used the lane in this manner for over twenty-one years and has thereby satisfied the continuity requirement: Keefer v. Jones, supra; Margoline v. Holefelder, 420 Pa. 544, 218 A. 2d 227 (1966). There is no evidence that the use of the lane by plaintiffs and their predecessors in title has ever been prevented by defendants or their predecessors in title from 1930 until the present time.

The last requirement is that the use be open and notorious. This requirement may be satisfied by a showing that either the land owner against whom the use is claimed has actual knowledge of the use or has had a reasonable opportunity to learn of its existence. Restatement of Property, Servitudes §458. Mary Charles Speece, defendants' predecessor in title, testified that she had actual knowledge of the use of the lane by the Antrobus family from 1957 until 1978 when the property was sold to defendants. In the 1930's and 1940's the strip of land in question was a clearly defined lane so as to put the owner of the servient property on notice. The

Antrobus family used the lane openly and regularly. They kept it clear of underbrush and stoned it. In addition, they continuously posted the lane with "No Hunting" signs. It is therefore apparent that the use of the lane by plaintiffs and their predecessors in title was open and notorious for the required 21 years.

The fact that the use of the lane by plaintiffs has decreased in recent years and grass has been allowed to grow up on the lane raises the question of whether plaintiffs have abandoned their easement. In Pennsylvania a prescriptive easement is not abandoned by mere nonuse. Rather, there must be an affirmative act by the holder of the easement indicating an intention to abandon the easement. Merely allowing vegetation to grow on the lane is not an affirmative act on the part of plaintiff but is simply the result of doing nothing: Sabados v. Kiraly, 258 Pa. Superior Ct. 532, 393 A. 2d 486 (1978). There has in this case been no affirmative act on the part of plaintiffs that would indicate an intent to abandon.

Defendant maintains that plaintiffs have not acquired a prescriptive easement because their use has not been exclusive. While most of the case law does not list exclusivity as a requirement for the creation of an easement by prescription, those that do have not used the term to mean that plaintiff must be the only user of the land in question. On the contrary, the term is employed to express the principle that the user may not derive his right to use the land from the right of another. It is exclusive in the sense that it does not depend on a similar right given to others or the public at large: Percy A. Brown & Co. v. Raub, 357 Pa. 271, 54 A. 2d 35 (1947).

In the instant case, plaintiffs' use of the land in

question is exclusive in this sense. Plaintiffs and their predecessors in title did not derive their right to use the property from any other individual. The critical point is that the Antrobus family used the lane as a claim of right and not in conjunction with a permissive use given to the public at large. See Detweiler et ux. v. Schenk et ux., 9 Bucks 159 (1959). This is illustrated by the fact that they took steps to keep the public out. They continuously posted the lane with "No Hunting" signs and allowed grass to grow up in the lane in the 1970's in order to discourage trespassers.

Defendants also maintain that plaintiffs' claim to an easement by prescription [is defeated by their] failure to file a statement of the claim in the Office of the Recorder of Deeds pursuant to the Act of 1901, May 31, P.L. 352, 68 P.S. §81. Defendants' argument is misplaced for the simple reason that the statute applies only to those cases in which the user claims title in fee by adverse possession and has no relevancy to a claim of a prescriptive easement over the fee: Jackson v. Pace, 20 Monroe 104 (1958), exceptions dismissed 21 Monroe 30.

Lastly, defendents assert that since plaintiffs intend to subdivide their property and [have built] two residential dwellings on the lot, the permissive extent of the easement will be exceeded. It is true that an easement by prescription is limited by the use made of it during the prescriptive period: Donahue v. Punxsutawney Borough, 298 Pa. 77, 148 A.41 (1929). But this limitation is not absolute. Bodman v. Bodman, 456 Pa. 412, 321 A. 2d 910 (1974).

"Easements by prescription may be apportioned when the dominant tenement is subdivided. Restatement of Property §488 (1944). Furthermore, 'normal evolution in the use of the dominant tene-

ment' will permit reasonable increases in the burden imposed on the servient tenement. Restatement of Property §479 (1944)." Id. at 412, 321 A. 2d 912.

In the instant case, the lane was used during the prescriptive period for ingress and egress to a wooded lot by foot, horse and wagon and later automobiles and an occasional truck. Should plaintiffs subdivide and build two residential houses, there will naturally be an increase in use. We do not, however, find this increased use to be unreasonable and it is in fact well within the "normal evolution in the use of the dominant tenement."

For the foregoing reasons we reach the following

## CONCLUSIONS OF LAW

1. Plaintiffs and their predecessors in title have been in adverse, continuous, uninterrupted, open and notorious use of a lane across defendants' property in excess of 21 years.

2. Plaintiffs have not abandoned their easement across defendants' property.

3. Plaintiffs' use of the lane across defendants' land has been exclusive.

4. The act of 1901, May 31, P.L. 352, 68 P.S. §81 has no relevance to the creation of an easement by prescription.

5. The use of the lane in question by the residents of two proposed houses on plaintiffs' property would not unreasonably increase the use of the lane beyond that of the prescriptive period.

6. As of November 20, 1951. Albert Antrobus and Eileen Antrobus acquired an easement by prescription across a strip of defendants' land approximately 17 feet wide and 1716 feet long, being

part of Bucks County Tax Map Parcel No. 47-4-43-2, and extending from the Thompson Mill Road to a portion of the northeast boundary of plaintiffs' property. Said easement by prescription runs with the land and is presently owned by plaintiffs Albert Kirby Antrobus and Patricia Krier Antrobus.

## DECREE NISI

And now, June 30, 1982, in consideration of the within findings of fact, discussion and conclusions of law, it is hereby ordered and directed that plaintiffs own an easement by prescription across a strip of defendants' property measuring approximately 17 feet wide and 1716 feet long extendig from Thompson Mill Road to a portion of the northeast boundary of plaintiffs' property. Defendant is enjoined from interfering with or obstructing in any manner the easement enjoyed by plaintiffs over defendants' property.

Prothonotary is directed to notify the attorneys of record of the filing of this Adjudication, and if exceptions are not filed within 20 days after such notice, to enter the decree nisi, on praecipe, as the final decree.