J-A13038-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JEFFREY R. JONES | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PINE CREEK HILLS LLC | : | No. 1256 WDA 2023 |

Appeal from the Order Entered September 19, 2023
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-21-012264

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JUNE 13, 2024**

Appellant, Jeffrey R. Jones, appeals from the trial court's September 19, 2023 order, which denied his Amended Petition for Confirmation of Expiration of Recorded Easement in Equity after determining that the easement recorded at the Recorder's Office of Allegheny County in Deed Book Volume 10575, Page 633 on or about September 11, 1998 (hereinafter, "Easement" or "Sanitary Sewer Easement"), has not been abandoned, extinguished, or otherwise terminated.  After careful review, we affirm.

Appellant filed a Petition for Confirmation of Expiration of Recorded Easement in Equity, followed by an Amended Petition for Confirmation of Expiration of Recorded Easement in Equity, seeking to have the trial court order and decree that the Easement is abandoned and extinguished. Thereafter, the trial court entered an order stating that a rule is issued upon Appellee, Pine Creek Hills LLC ("PCH"), the respondent below, to show cause

why Appellant is not entitled to the relief requested and advising that

Appellant's petition would be decided under Pa.R.Civ.P. 206.7, among other

things.[1] PCH then filed a response, in which it requested that the court deny

Appellant relief.

The parties subsequently filed a joint stipulation, in which they agreed

to the following facts:

> a. This case involves a Sanitary Sewer Easement granted to an undeveloped parcel of approximately 50 acres located in Indiana Township, Allegheny County, Pennsylvania.
>
> b. The authenticity of the Sanitary Sewer Easement, as documented in the attached Exhibit A, including the survey showing the placement of the Easement, is undisputed.
>
> c. The Easement was granted on September 11, 1998, by Robert J. Jones, owner of property consisting of approximately three acres, having an address of 3360 Saxonburg Blvd., Glenshaw, PA 15116 (the Servient Tenement, hereinafter "the Jones Property"), to PARC Development, L.P., the then-owner of the adjoining property located at Chapel Crest Terrace, Pittsburgh, PA 15238 (the Dominant Tenement, hereinafter "the Pine Creek Property").
>
> d. The Easement was sought to allow the land-locked Pine Creek Property access to the municipal sewer system on Saxonburg Blvd.
>
> e. Robert J. Jones died on June 30, 1999. On August 2, 2001, [Appellant], son of Robert J. Jones, became the sole owner of the Jones Property as the beneficiary and heir of the Estate of Robert J. Jones….
>
> f. PARC Development, L.P., sold the Pine Creek Property to Hillcrest Trust on July 9, 2007. On December 21, 2009, Hillcrest Trust sold the Pine Creek Property to [PCH], the current owner….

---

[1] Rule 206.7 outlines the procedure to be followed after the issuance of a rule to show cause.

g. [PCH] is a Pennsylvania single-member limited liability company whose sole member is James E. Rohr. James E. Rohr and his wife reside in a residential property which adjoins the Pine Creek Property.

h. The prior owners of the Pine Creek Property were developers that planned to subdivide the [Pine Creek ]Property for construction of multiple residences. A plan presented by PARC Development to the Indiana Township Planning Commission to erect 35 housing units on the Pine Creek Property was denied, with the denial subsequently affirmed on appeal to the Allegheny County Court of Common Pleas…. A subsequent plan by Hillcrest Trust for the erection of 9 housing units was also denied by the Planning Commission.

i. Neither the current nor prior owners of the Pine Creek Property have made use of the Sanitary Sewer Easement to date, but neither have they done any affirmative acts inconsistent with the intention to make a future use of the Easement or to make it impossible to use the Easement across the Jones Property.

Joint Stipulation, 3/3/23, at ¶¶ a-i (citation and brackets omitted).

As mentioned *supra*, attached to the joint stipulation as Exhibit A is the

Grant of Easement, dated September 11, 1998. It states, in relevant part:

<u>GRANT OF EASEMENT</u>

IT IS HEREBY agreed that Robert J. Jones, unmarried, (hereinafter called Grantor) for the sum of SEVENTEEN THOUSAND FIVE HUNDRED AND NO/100 ($17,500.00) DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION, paid by PARC Development, L.P., a Pennsylvania limited partnership, (hereinafter called Grantee), does grant, sell, and convey unto Grantee an easement and right-of-way upon and across the following described property of the Grantor:

ALL that certain piece, parcel or tract of land situate in the Township of Indiana, County of Allegheny and Commonwealth of Pennsylvania, consisting of three (3) acres, more or less, having erected thereon a dwelling house known as 3360 Saxonburg Boulevard, Glenshaw, PA 15116.

DESIGNATED Block and Lot No. 523-H-103.

TITLE REFERENCE: Deed Book Volume 5601, Page 911, and Deed Book Volume 9687, Page 118.

The easement and right-of-way hereby granted shall benefit the adjacent property of Grantee, located in Indiana Township, Allegheny County, Pennsylvania, more fully described as Exhibit "A" attached hereto and incorporated herein by reference. The location of the easement and right-of-way hereby granted is shown on the Plan, attached hereto as Exhibit "B" and incorporated herein by reference, the legal description of which is set forth on Exhibit "C", attached hereto and incorporated herein by reference. The easement granted hereunder shall also include these areas outside of the right-of-way reasonably necessary for Grantee to complete its work in the right-of-way.

The right-of-way, easement, rights and privileges herein granted shall be used only for the purpose of placing, constructing, operating, repairing, maintaining, rebuilding, replacing, relocating, and removing a pipeline, manholes, and appurtenances for sanitary sewer purposes.

The easement, rights and privileges herein granted shall be for so long as Grantee, its successors and assigns, shall operate a sanitary sewer pipeline within said easement. The easement, rights and privileges herein granted shall terminate when or at such time as the purposes hereof cease to exist, are abaondoned [*sic*] by Grantee or become impossible of performance.

The easement, rights and privileges granted herein are exclusive, and Grantor covenants that it will not convey any other easement or conflicting rights within the area covered by this grant[.]

Should Grantee fail to perform any covenant, undertaking or obligation arising hereunder, if Grantor engages counsel to recover damages or to enforce performance of this agreement, Grantor's costs, expenses and reasonable counsel fees, whether or not suit is instituted and in addition to all other legal damages, shall be paid by Grantee.

Grantor also retains, reserves, and shall continue to enjoy the use of the surface of such property for any and all purposes which do not interfere with and prevent the use by Grantee of the within easement.

Grantee, its agents, employees or contractors, shall use all reasonable means to avoid inconvenience to Grantor, or damage

to or injury to Grantor's real property, or any property of Grantor located thereon, during the course of construction, repair or maintenance of the contemplated improvements. Upon completion of such construction, repair or maintenance, Grantee shall restore the Grantor's property to its prior condition, repairing any damage caused by the work, replant with grass seed any exposed earth, clean the site, and generally leave the area in good condition, all at Grantee's sole cost and expense.

Grantee shall have the right to assign, convey and dedicate the easement, rights and privileges granted hereunder to the Deer Creek Drainage Basin Authority.

This instrument shall be binding on the heirs, executors, administrators, successors and assigns of the parties hereto.

Joint Stipulation at Exhibit A ("Grant of Easement") at 1-3 (unnumbered; capitalization in original).

Following the filing of the joint stipulation, both parties filed briefs in support of their positions. In Appellant's brief, among other things, he argued that — under the Grant of Easement — the Easement terminated when no sewer line was installed or even commenced, and PARC Development conveyed the Pine Creek Property to Hillcrest Trust. He also asserted that the Easement ended because of, *inter alia*, impossibility of performance and/or abandonment.

In response, PCH argued, *inter alia*, that the Easement qualifies as an easement appurtenant and passed by operation of law and by deed to PCH, and that the failure of PARC Development to use the Easement by installing a sewer line prior to its transfer to Hillcrest Trust cannot be construed as a basis for termination. It also contended that nothing in the Grant of Easement demonstrates an intent to deprive PARC Development of the ability to convey

the Easement to subsequent purchasers, refuted that the Easement has been abandoned, and claimed that no conditions exist which make use of the Easement impossible.

The trial court held argument, and directed the parties to file supplements to the stipulated record and reply briefs.[2] In Appellant's reply brief, among other things, he asserted that the Easement is an easement in gross, as the easement was personal and limited to PARC Development unless and until a sewer line was constructed. On the other hand, PHC argued in its reply brief, *inter alia*, that the Grant of Easement contains no language imposing upon PARC Development an obligation to install a sewer line prior to transferring the Pine Creek Property in order to maintain the Easement.

On September 19, 2023, the trial court filed an opinion and order, denying Appellant's petition. It determined, *inter alia*, that the Easement is an easement appurtenant that passes by operation of law, and that the factual record does not demonstrate that the purposes of the Easement ceased to exist, that performance is impossible, or that PARC Development took affirmative steps to abandon the Easement. It also concluded that the fact that the sanitary sewer pipeline has not been constructed to date does not warrant relief for Appellant.

_____

[2] It appears that the record was supplemented with the 2007 deed conveying the Pine Creek Property from PARC Development to Hillcrest Trust, the 2008 deed conveying the Pine Creek Property from Hillcrest Trust to PCH, an affidavit from James Rohr, and the deposition of Appellant.

Appellant thereafter filed a timely notice of appeal. The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) concise statement, and it indicated that the reasoning for its decision was set forth in its September 19, 2023 opinion.

On appeal, Appellant raises a single question for our review:

> Did the [t]rial [c]ourt err by finding that the [E]asement in this matter was not extinguished, since the original grantee did not develop the [E]asement and subsequently conveyed its rights to another entity?

Appellant's Brief at 4.

Appellant argues that this matter is controlled by the following two paragraphs in the Grant of Easement:

> The easement, rights and privileges herein granted shall be for so long as Grantee, its successors and assigns, shall operate a sanitary sewer pipeline within said easement. The easement, rights and privileges herein granted shall terminate when or at such time as the purposes hereof cease to exist, are abaondoned [*sic*] by Grantee or become impossible of performance.
>
> ***
>
> Grantee shall have the right to assign, convey and dedicate the easement, rights and privileges granted hereunder to the Deer Creek Drainage Basin Authority.

Grant of Easement at 2, 3 (unnumbered); **see also** Appellant's Brief at 8.

Based on this language, Appellant contends that the Easement terminated when PARC Development conveyed the Pine Creek Property to Hillcrest Trust, the sewer line was not developed, and PARC Development did not convey its rights under the Grant of Easement to Deer Creek Drainage Basin Authority. Appellant's Brief at 9. Appellant argues that "the Grant of

Easement clearly provides … any sewer line, installed by PARC[ Development],

is assignable but, if no sewer line is installed, PARC[ Development] cannot

assign this unused right." *Id.* at 10.[3]  To further support this reading, he says

that PARC Development "was able to assign its easement right to Deer Creek

Drainage Basin Authority, but that did not occur.  The assignment to Deer

Creek was the only assignment so provided for." *Id.*

As such, Appellant claims that the Easement "was an easement in gross

that could have, but did not, ripen into an easement appurtenant." *Id.*

(citation omitted).  He advances that the Easement "was created considering

two eventualities, that is, if the sewer line was developed, the [E]asement

would clearly be an easement appurtenant." *Id.* at 11.  However, he says, "if

the [E]asement were not developed, the [E]asement would be limited to (or

personal to) PARC[ Development] and would expire when PARC[

_____

[3] Appellant further explained his interpretation below as:

> Drawing the [c]ourt's attention to the first excerpted paragraph,
> that paragraph permits the easement rights and privileges to
> continue "… for so long as Grantee, its successors and assigns,
> shall operate a sanitary sewer pipeline within said easement[.]"
> …
>
> However, the parties agree that no such easement was installed
> and exists.  As a result, the controlling sentence is the following
> sentence which states, "the easement … shall terminate when or
> at such time as the purposes hereof cease to exist, are abandoned
> by Grantee or become impossible of performance[.]" … This
> sentence does not extend any rights to "successors or assigns[."]
> This is a significant, crucial and dispositive difference.

Appellant's Trial Court Brief, 3/22/23, at 3 (emphasis in brief).

Development] conveyed the property, which otherwise would be the dominant estate." *Id.*

This Court has previously explained that "[t]he same rules of construction apply to deeds granting easements as to contracts generally." *Southall v. Humbert*, 685 A.2d 574, 577 (Pa. Super. 1996) (citation omitted). Further,

> [i]n construing a deed or a contract, certain general principles must be kept in mind. First, it is the intention of the parties at the time of entering in thereto that governs, and such intention is to be gathered from a reading of the entire contract. In addition, [c]ontracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language….

*Id.* (cleaned up). "[W]hether a trial court properly interpreted a contract is a question of law and our scope of review is plenary." *PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 112 (Pa. Super. 2001) (citation omitted).

"An easement is defined as: an interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 676 n.7 (Pa. Super. 2005) (citation, brackets, and quotation marks omitted). *See also Morning Call, Inc. v. Bell Atlantic-Pennsylvania, Inc.*, 761 A.2d 139, 142 (Pa. Super. 2000) ("An easement has been defined as a liberty, privilege or advantage which one may have in the lands of another without profit….") (citation and quotation marks omitted).

Here, the parties dispute whether the Easement is an easement appurtenant or an easement in gross. "An easement is appurtenant when a

servient estate exists for the beneficial use of a dominant estate." **Southhall**, 685 A.2d at 578 (citation omitted). **See also Brady v. Yodanza**, 425 A.2d 726, 727 (Pa. 1981) ("Existence of a servient tenement for the beneficial use of a dominant tenement is a prerequisite to the creation of an easement appurtenant.") (citation omitted). "Many cases recognize that where an easement is annexed as an appurtenance to land…, it passes with a transfer of the land although not specifically mentioned in the instrument of transfer." **Brady**, 425 A.2d at 728 (citations omitted). **See also id.** (noting that an easement appurtenant "passes by operation of law" and that "[u]nless the … grantors limit or make personal the right of way, it is an appurtenance to the land it benefits") (footnote omitted). Further, "[a]n expressly created easement appurtenant can conceivably last forever[,]" and "[m]ere non-use, no matter how long extended, will not result in extinguishment of an easement created by deed." **Id.** at 727, 727 n.2 (citations omitted).

In contrast, "[a]n easement in gross is a mere personal interest in, or right to use the land of another." **Loughran v. Matylewicz**, 81 A.2d 879, 881 (Pa. 1951) (emphasis omitted). "An 'easement in gross' benefits a particular entity rather than a particular piece of land. An 'easement in gross' is an easement with a servient estate but no dominant estate." 7 Summ. Pa. Jur. 2d Property § 18:3 (2d ed. 2024) (footnote omitted). **See also Lindenmuth v. Safe Harbor Water Power Corp.**, 163 A. 159, 160 (Pa. 1932) ("The easement is in gross, and personal to the grantee, because it is not appurtenant to other premises."). An easement in gross "is generally held

- 10 -

to be nonassignable[,] unless it is made assignable by the instrument creating it." **Rusciolelli v. Smith**, 171 A.2d 802, 806 (Pa. Super. 1961) (citations omitted). **Accord Miller v. Lutheran Conference & Camp Ass'n**, 200 A. 646, 651 (Pa. 1938) ("There does not seem to be any reason why the law should prohibit the assignment of an easement in gross if the parties to its creation evidence their intention to make it assignable.").

This Court has recognized that "[a]n easement will never be presumed to be a mere personal right when it can fairly be construed to be appurtenant to some other estate." **Rusciolelli**, 171 A.2d at 806 (citation omitted). Moreover, "[w]hether an easement is in gross or appurtenant must be determined by the fair interpretation of the grant or reservation creating the easement, aided if necessary by the situation of the parties and the surrounding circumstances." **Id.** (citation omitted).

In the case *sub judice*, we conclude that the Easement can fairly be construed as an easement appurtenant. **See Rusciolelli**, **supra**. The Grant of Easement states, "The easement and right-of-way hereby granted **shall benefit the adjacent property of Grantee**…." Grant of Easement at 1 (emphasis added; unnumbered); **see also** Joint Stipulation at ¶ a ("This case involves a Sanitary Sewer Easement **granted to an undeveloped parcel of approximately 50 acres** located in Indiana Township, Allegheny County, Pennsylvania.") (emphasis added). Further, in the parties' joint stipulation, they recognized that "[t]he Easement was sought to allow the land-locked Pine Creek Property access to the municipal water system on Saxonburg

- 11 -

Blvd.[,]" and that the Pine Creek Property was the dominant tenement and the Jones Property was the servient tenement. Joint Stipulation at ¶ d; *see also id.* at ¶ c. As discussed *supra*, these are characteristics of an easement appurtenant, not an easement in gross, as a dominant estate exists, and the Easement benefits a particular piece of land.

To the extent Appellant says that the Grant of Easement limits the development of the sanitary sewer line to PARC Development, we disagree. Initially, there is no explicit language in the Grant of Easement to this end. *Accord* PCH's Brief at 18-19 ("Where does the [Grant of ]Easement state that it terminates if PARC[ Development] conveys the dominant tenement without installing a sewer line?"). As PCH observed below,

> the express terms of the [Grant of ]Easement do not support [Appellant's] request that the Easement be read as terminating when PARC[ Development] transferred the dominant estate to Hillcrest[ Trust] before installing and operating a sewer line. Such a result would stand in direct conflict with the well-established rule that an easement appurtenant is transferred to the subsequent purchaser of the dominant tenement by operation of law. Therefore, if the parties intended this Easement to operate outside the normal framework of Pennsylvania law, they had the opportunity to identify those intentions by including clear and unambiguous language. However, no such language exists in the Easement…. The simple fact is that the [Grant of ]Easement contains no language imposing upon PARC[ Development] an obligation to install and operate a sewer line immediately, by a specific date or prior to transferring the dominant estate in order to maintain the Easement….

PCH's Trial Court Reply Brief, 7/7/23, at 10-11 (citations omitted). We agree.

Furthermore, the Grant of Easement specifically states that "[t]he easement rights and privileges herein granted shall terminate when or at such

time as the purposes hereof cease to exist, are abaondoned [*sic*] by Grantee or become impossible of performance." **See** Grant of Easement at 2 (unnumbered). None of these termination events have occurred.

First, the purpose of the Easement continues to exist, as the Pine Creek Property is land-locked, access to the municipal sewer system is on Saxonburg Boulevard, and the owners of Pine Creek Property have not affirmatively acted in a way inconsistent with the intention to use the Easement in the future. **See** Joint Stipulation at ¶ d ("The Easement was sought to allow the land-locked Pine Creek Property access to the municipal sewer system on Saxonburg Blvd."); **see also id.** at ¶ i (stipulating that neither the current nor prior owners of the Pine Creek Property have done any affirmative acts inconsistent with the intention to make a future use of the Easement).

Second, the Easement was not abandoned by PARC Development or any subsequent owner for that matter. With respect to abandonment, our Supreme Court has explained:

> In Pennsylvania, the law requires that there be showing of intent of the owner of the dominant tenement to abandon the easement, coupled with either (1) adverse possession by the owner of the servient tenement; or (2) affirmative acts by the owner of the easement that renders … use of the easement impossible; or (3) obstruction of the easement by the owner of the easement in a manner that is inconsistent with its further enjoyment.

***Ruffalo v. Walters***, 348 A.2d 740, 741 (Pa. 1975) (citation omitted).[4]  As for

the first prong, no one has argued that Appellant has adversely possessed the

Easement.  Regarding the second prong, the parties stipulated that "[n]either

the current nor prior owners of the Pine Creek Property have … done any

affirmative acts … to make it impossible to use the Easement across the Jones

Property."  Joint Stipulation at ¶ i.[5]  With respect to the third prong, the parties

also stipulated that "[n]either the current nor prior owners of the Pine Creek

Property have … done any affirmative acts inconsistent with the intention to

make a future use of the Easement…."  ***Id.***  As such, the record supports that

neither PARC Development nor any subsequent owners obstructed the

Easement in a manner that is inconsistent with its further enjoyment.

---

[4] ***See also Sabados v. Kiraly***, 393 A.2d 486, 487-88 (Pa. Super. 1978) ("It is well established in Pennsylvania law that in order to show an abandonment of a right-of-way or easement created by deed, the evidence must clearly show some conduct on the ground by the holder of the right-of-way which manifests that he [i]ntended to abandon and give up permanently his right to use it.  Such conduct must consist of some [a]ffirmative act [o]n his part which renders use of the easement impossible, or of some [p]hysical obstruction of it by him in a manner that is inconsistent with its further enjoyment.  Mere nonuse of the right-of-way by its holder, no matter how long continued, cannot manifest an intention to abandon the right, because there is no legal obligation upon the right-of-way owner to use it in order to keep his title to it.") (citation omitted).

[5] Appellant argues that, under his reading of the Grant of Easement, it is impossible for the Easement to be used because the Grant of Easement limits development of the sewer line to PARC Development, and PARC Development did not develop the sewer line before it conveyed the Pine Creek Property to Hillcrest Trust.  Appellant's Brief at 5-6.  As we do not agree with Appellant's contention that PARC Development had to develop the sewer line before conveying the Pine Creek Property to Hillcrest Trust for the reasons set forth in this writing, we reject this claim of impossibility.

Finally, performance is not impossible. Again, the joint stipulation entered by the parties states that "[n]either the current nor prior owners of the Pine Creek Property have … done any affirmative acts … to make it impossible to use the Easement across the Jones Property." Joint Stipulation at ¶ i. Additionally, although the Indiana Township Planning Commission has denied prior owners' plans to develop the Pine Creek Property, **see id.** at ¶ h, Appellant points to no facts in the record establishing that development on the property can never occur, rendering performance impossible. **Accord** PCH's Brief at 15 ("[N]o conditions exist which demonstrate that the intended purpose of the Easement acting as a sanitary sewer conduit is impossible."). Thus, none of the events that would warrant termination of the Easement under the Grant of Easement have occurred.

We recognize that the Grant of Easement also states, "The easement, rights and privileges herein granted shall be for so long as Grantee, its successors and assigns, shall operate a sanitary sewer pipeline within said easement." Grant of Easement at 2 (unnumbered). It is undisputed that neither the current nor prior owners of the Pine Creek Property have used the Easement to date. Joint Stipulation at ¶ i. Nevertheless, the current and prior owners also have not done any affirmative acts inconsistent with the intention to make future use of the Easement, **see id.**, which suggests that a sewer pipeline may operate within the Easement someday. In addition, the Grant of Easement delineates the specific circumstances in which the Easement would terminate, and as discussed *supra*, none of them have occurred. **See** pages

12-15, *supra*. We also repeat that "[m]ere non-use, no matter how long extended, will not result in extinguishment of an easement created by deed." *Brady*, 425 A.2d at 727 n.2.

As for Appellant's argument that PARC Development was able to assign the Easement to Deer Creek Drainage Basin Authority, but did not do so, and that the assignment to Deer Creek Drainage Basin Authority was the only assignment provided for if the sewer line was not developed, we likewise reject this claim. While the Grant of Easement states that PARC Development "shall have the right to assign, convey and dedicate the easement, rights and privileges granted hereunder to the Deer Creek Drainage Basin Authority[,]" *see* Grant of Easement at 3 (unnumbered), nowhere does the Grant of Easement state that Deer Creek Drainage Basin Authority is the **exclusive** transferee of the Easement. **Accord** PCH's Brief at 19 ("Where does it state that Deer Creek Drainage Basin Authority … is the exclusive transferee of the Easement?"). We concur with PCH that "the appropriate interpretation is that the Easement allowed for a transfer to Deer Creek[ Drainage Basin Authority] but also permitted the normal transfer to a purchaser of the dominant tenement." *Id.* at 21.

In closing, we also point out that the Grant of Easement provides, "This instrument shall be binding on the heirs, executors, administrators, successors and assigns of the parties thereto." Grant of Easement at 3 (unnumbered). As the trial court observed, Appellant's interpretation of the Grant of Easement ignores this express provision. **See** Trial Court Opinion,

9/19/23, at 6. The trial court discerned that, "if each of the rights were so carefully crafted and delineated as to which continued and which expired, there would be no need for this final provision. … [Appellant's] interpretation would render this final provision meaningless." **Id.** at 6-7. We also observe that the Grant of Easement could have said that it is binding on the heirs, executors, administrators, successors and assigns of the parties hereto **if** PARC Development installed a sewer line or assigned the Easement to Deer Creek Drainage Basin Authority. It does not. Instead, it puts no conditions on when the Grant of Easement would be binding on future transferees. As such, we are unpersuaded by Appellant's argument that the Easement is an easement in gross that could have, but did not, ripen into an easement appurtenant.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/13/2024