■ In the Matter of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Real Property for the COLLEGE POINT INDUSTRIAL PARK, URBAN RENEWAL, PROJECT II. MILEAU CORPORATION, Appellant.—In a condemnation proceeding, the claimant, Mileau Corporation, appeals from so much of the fourth separate and partial final decree of the Supreme Court, Queens County, entered May 1, 1978, and the fourth separate and partial supplemental final decree, of the same court, entered August 9, 1978, as failed to make any award of damages to it with regard to Damage Parcels Nos. 159D, 159E, 159G and 163B. Decrees reversed insofar as appealed from, with costs, it is determined that the appellant is the owner of Damage Parcels Nos. 159D, 159E, 159G and 163B and is entitled to damages for the taking thereof and the matter is remanded to Special Term for further proceedings consistent herewith. The four damage parcels involved on this appeal consist of land now filled in which made up part of the bed of Mill Creek in Queens County, which traverses land formerly owned by the claimant. Claimant's holdings were condemned in this proceeding by the city. In the litigation which ensued to determine what compensation claimant was entitled to, it was asserted by the city that the property encompassing the four damage parcels in question belonged to it by virtue of the fact that it had title to all lands under tidal waters extending back to the days of colonial occupation of this city and that such title was inalienable and/or was never otherwise relinquished by the city. The claimant disputed the fact that Mill Creek actually ran over its property and argued that even if it did, it had obtained title thereto through, *inter alia,* adverse possession. Special Term found the facts to be in accordance with the city's contention and rejected the theories of title transfer from the city set forth by the claimant. No award of damages was made to claimant for the subject damage parcels. We disagree with Special Term's ultimate finding herein and hold that claimant has obtained title to the parcels in question through adverse possession. It is uncontradicted that for years prior and subsequent to

claimant's occupation of its land there was no water to be found thereon. Claimant purchased its property and established a business thereon which it fenced in and maintained openly and notoriously for 18 years until it lost title thereto through the instant condemnation proceeding. No adverse claim was ever made to any portion thereof by the city. Claimant paid real estate taxes on its property to the city. The city's expert testified that though Mill Creek had once, naturally, passed over the claimant's property, as is asserted by the city, its path has been altered as a result of various road pavings and other constructions and that Mill Creek exists today, but it no longer follows its original bed. It is uncontradicted that a visual examination of the property at the time of trial would not reveal any water thereon. We are in agreement with Special Term's finding that the title to the land in the bed of Mill Creek was held by the city as a result of colonial grant. Title to land under water once vested in the municipality cannot be divested by adverse possession, even after it is filled, if it was made inalienable by statute or it is held for a public purpose; if it is held merely in a proprietary capacity and there is no statutory prohibition to alienability, the converse is true (see *City of New York v Wilson & Co.,* 278 NY 86, 97; *Long Is. Land Research Bur. v Town of Hempstead,* 203 Misc 619, affd 283 App Div 663, affd 308 NY 818; 2 NY Jur, Adverse Possession, § 103). By Act of 1897 (New York City Charter, §§ 71, 83, 84), the rights of the city to its lands under water were declared to be inalienable. In 1956, however, the enactment of section D51-48.1 of the Administrative Code of the City of New York enabled the Board of Estimate to convey certain lands described under the waters of Mill Creek, including that comprising the damage parcels herein involved. Such legislation provided that upon application of an abutting land owner, the Board of Estimate could "in its discretion, upon such terms and conditions and for such consideration as such board shall determine", convey and release the city's title to such property. A legislative comment to this enactment states that "The bill would permit the City to dispose of property having no navigable value and for which there is no municipal need" and that "This would result in revenue to the City in the form of consideration received for the release and future taxes from the land and improvements that may be made thereon" (1956 McKinney's Session Laws, p 1820). It appears from the record on appeal that the Board of Estimate did in fact release portions of the bed of Mill Creek to an owner of land contiguous to claimant's property after finding specifically that such parcels were not used for any public purpose. Combining with this, the fact of the city's apparent abandonment of the land comprising the damage parcels in question and claimant's uninterrupted open and notorious use of such property for 18 years, we cannot say, as did Special Term, that claimant has not obtained title to the subject parcels through adverse possession. To agree with Special Term would be to put form over substance by requiring that an application should have been made to the Board of Estimate by the claimant for a release of the subject parcels and holding that the absence of a grant of such an application mandates a finding that the subject parcels are being held by the city for a public purpose. The facts of the case indicate that the situation is indeed otherwise. The claimant must be compensated for the taking by the city of the subject damage parcels. Mollen, P. J., Damiani, Mangano and Martuscello, JJ., concur.