591 A.2d 711

WILLIAMSTOWN BOROUGH AUTHORITY, Appellant,

v.

Fayne Q. COOPER and Alicia G. Cooper, his Wife, David J. Watkeys and Rayetta Watkeys, his Wife, Gerald M. Ressler and Jean E. Ressler, his Wife, Martin F. Brennan and Connie M. Brennan, his Wife

v.

Richard A. LENKER, Kenneth Williams, Dorothy Williams and Lenker & Williams Real Estate, Inc.

Superior Court of Pennsylvania.

Argued Dec. 11, 1990.

Filed April 1, 1991.

Rearguments Denied June 14, 1991.

Robert G. Radebach, Harrisburg, for appellant.

Alicia G. Cooper, pro se.

Pamela G. Shuman, Harrisburg, for Watkeys and Ressler, appellees.

Francis A. Zulli, Harrisburg, for Lenker and Williams, appellees.

Before CIRILLO, President Judge, and JOHNSON and BROSKY, JJ.

BROSKY, Judge.

■ This appeal is taken from the judgment entered on the verdict of the court of common pleas of Dauphin County, Pennsylvania, following a trial without a jury, in favor of appellees, Fayne Q. Cooper and Alicia G. Cooper (the Coopers), David J. Watkeys and Rayetta Watkeys (the Watkeys), and Gerald M. Ressler and Jean E. Ressler (the Resslers) and against appellant, Williamstown Borough Authority, as a result of the latter's action in ejectment against appellees.[1] The court also found in favor of Martin F. and Connie M. Brennan, although they did not file an appellee's brief with this Court. The court based its verdict in favor of the appellees on the basis of the equitable defense of laches.[2] We are constrained to reverse the

1. Richard A. Lenker, Kenneth Williams, Dorothy Williams and Lenker & Williams Real Estate, Inc., are not parties to this appeal, even though they have filed an appellee's brief. They were joined as additional defendants in Third–Party Complaints each filed by the Coopers, the Watkeys and the Resslers for damages. The decision of the trial court concerned only the ejectment claim of appellant against appellees. The court indicated in its Order that the trial had been bifurcated in order to decide only the ejectment claim of appellant against appellees. The court also opined that its decision rendered moot most of the claims against the additional defendants with the possible exception of attorney fees, costs and expenses. The court indicated in its Opinion, however, that it was not then deciding the claim of appellees against the additional defendants.

2. Laches is an affirmative defense which must be responsively pleaded under New Matter. Pa.R.C.P. 1030. *See also Gabster v. Mesaros,* 422 Pa. 116, 220 A.2d 639 (1966). If not so pleaded, the affirmative defense is waived. Pa.R.C.P. 1032. *Iorfida v. Mary Robert Realty Co.,* 372 Pa.Super. 170, 539 A.2d 383 (1988), *appeal denied,* 520 Pa. 576, 549 A.2d 136 (1988). Although appellees Coopers, Watkeys and Resslers, each filed answers to the Complaint in Ejectment, only the Coopers filed New Matter in which they pleaded this affirmative defense. However, the trial court's decision on the basis of laches granted relief to each of the six appellees and the Brennans, even though the focus of its Opinion was almost exclusively on the plight of the Coopers.

decision of the trial court that appellant is barred by the equitable doctrine of laches from ejecting appellees from their respective properties. Our reasoning follows.

The facts surrounding this dispute are as follows: The encroachment at issue is a narrow, snake-like strip of land encompassing forty-six acres in Williamstown Borough. Through the middle of this strip of land runs an eight-inch water pipeline owned by appellant. Appellant appears to have possessed either a fee ownership in or a right of way or easement over the disputed land since 1892. However, appellant claims that it was not until October 1984 that it knew of an ownership interest in the land in question.

Beginning in 1977, the additional defendants in the trial court conveyed tracts of land to the appellees which implicated the forty-six acre strip now claimed by appellant. In 1979, the Coopers purchased a tract of land from the additional defendants under an agreement of sale which provided that the Coopers pay the real estate taxes. The Coopers also arranged for a title search of the land. Early in 1984, the Coopers received a deed to the land from the additional defendants following an earlier successful application for a construction mortgage loan. Prior thereto, in the Fall 1983, the Coopers proceeded to clear the tract of trees to make way for the construction of their home.

In April or May 1984, Mr. Shutt, who was then the manager of appellant, was on a routine inspection of the water treatment plant operated by appellant near where the Coopers were building their home and observed the construction of the Coopers' home under way. Mr. Shutt observed that the construction was taking place thirty feet from the waterline. At that time, he did not discuss the possibility of the Coopers' encroachment with them. Nor did Mr. Shutt or anyone else from appellant contact them at that time regarding this problem. In fact, subsequent to Mr. Shutt's observation of the construction, the Coopers applied for and were granted water service for their property by appellant. Mr. Shutt admitted at trial that appellant did not seek to ascertain its exact possessory rights until

October 1984. Furthermore, he admitted that the Cooper home had been virtually constructed before the Coopers were notified of any possible encroachment.

In September 1984, when the Cooper home was well under construction, Mr. Cooper received a telephone call from Mr. Radebach, the solicitor of appellant. Mr. Radebach informed Mr. Cooper that appellant may be the owner of the property on which Mr. Cooper was building his home and that he [Mr. Radebach] was going to make arrangements to have the property surveyed to determine the extent of the encroachment. Mr. Radebach also informed Mr. Cooper that appellant would honor the latter's application for water service. Mr. Radebach admitted in this conversation that appellant did not know what, if any, type of encroachment was involved. When Mr. Cooper explained that he and his wife were ready to move into their home, Mr. Radebach informed Mr. Cooper that the latter and his wife could move into their home without fear of having to vacate because "it would be highly unlikely for someone to have built a house on someone else's property...." N.T. 95. Moreover, Mr. Radebach testified that appellant "really had no involvement until late August, early September [1984] when we started looking into the problem that we discovered." *Id.,* 96.

In October 1984, appellant hired a surveyor to survey the tract in dispute. In February 1985, the survey was completed. The results of this survey were virtually identical with the survey made in August 1907 and in the possession of appellant and its predecessors since that time. The 1907 survey sets forth and describes the forty-six acre tract of land as a right of way in appellant. It appears that the encroachment encompasses approximately ninety percent of the Coopers' property, including the portion on which they had constructed their home.[3]

3. The encroachment also entailed approximately one hundred ten feet of the Resslers' property and nearly one-third of the land owned by the Watkeys.

■ It was because appellant knew or had access to the knowledge, if not from 1892 then, at least, since 1907, that it possessed an ownership interest [4] in the disputed property because of documents in its possession evidencing this that the court determined that appellant's claim of ejectment was barred by the doctrine of laches.

It is apparent that tracts of land involved were conveyed to the various appellees well before appellant even considered informing the parties that a problem with ownership interests might exist. Tracts were conveyed to the Watkeys and to the Resslers in 1977. The Coopers purchased their tract in 1979 under an agreement of sale and were deeded the property in February 1984. The complaint in ejectment was filed in November 1985. The exhibits attached to the Complaint consisting of various deeds and abstracts of title detail the series of conveyances to the predecessor of appellant and to appellant dating back to 1892, when a right of way to the land now in question was conveyed to the predecessor of appellant and duly recorded. What is apparent from the record, in effect, is that appellant possessed either a fee simple interest or a right of way or easement since 1892 and that it knew or should have known of this fact in 1977 when the additional defendants began to convey the various tracts of land to the appellees.

■ The doctrine of laches is an equitable one whose purpose is the repose of title, claims and demands for the peace and order of society. *Gabster v. Mesaros*, 422 Pa. 116, 220 A.2d 639 (1966). Its application is not tied to a definite passage of time after accrual of a cause of action. Rather, it relates to whether, under the circumstances of a particular case, a party can be charged with lack of due diligence in failing to institute a claim. *Id; Harbor Marine Co. v. Nolan*, 244 Pa.Super. 102, 366 A.2d 936 (1976). Laches will not be found where the adverse party has not

4. An action in ejectment may be brought where the property interest claimed to be encroached upon is an easement or right of way. *See Dunlap v. Larkin*, 342 Pa.Super. 594, 493 A.2d 750 (1985). Apparently, therefore, it mattered not whether the type of interest claimed by appellant was in fee or by easement or right of way.

been harmed by the delay. *Brodt v. Brown,* 404 Pa. 391, 172 A.2d 152 (1961). Therefore, the mere passage of time is insufficient to warrant the application of the doctrine. Instead, it must further appear that the opposing party has been injured or has been materially prejudiced because of the delay. *Gabster, supra; Brodt, supra; Harbor Marine, supra.*

Despite the hardships to be endured by appellees if appellant is permitted to eject them from their possession and enjoyment of the land in question, we cannot legally sustain the action of the trial court granting appellees equitable relief in the nature of laches.

██ We begin by noting that a municipal authority, like appellant here, is not a creature or agent of the municipality which has created it. Rather, it is an agency of the Commonwealth and is, accordingly, part of its sovereignty. *Commonwealth v. Erie Metro. Trans. Auth.,* 444 Pa. 345, 281 A.2d 882 (1971); *Forney v. State Ethics Comm'n.,* 56 Pa.Commw. 539, 425 A.2d 66 (1981). Our research has failed to disclose any statute or any case law in this Commonwealth where the defense of laches has been asserted against the Commonwealth in cases involving Commonwealth land.[5] However, in disposing of this question

5. The defense of laches, however, has been recognized in other types of cases involving the Commonwealth. *See, e.g., Stahl v. The First Pennsylvania Banking & Trust Co.,* 411 Pa. 121, 191 A.2d 386 (1963) (proceeding by Attorney General for discovery and accounting directing bank to pay money into State Treasury without escheat); *Commonwealth ex rel. Storb v. Schroll,* 398 Pa. 354, 157 A.2d 179 (1960) (*quo warranto*); *Commonwealth ex rel. Coghlan v. Beaver Falls Council,* 355 Pa. 164, 49 A.2d 365 (1946) (mandamus); *Commonwealth ex rel. Margiotti v. Union Traction Co.,* 327 Pa. 497, 194 A. 661 (1937) (*quo warranto*); *Commonwealth v. Bala & Bryn Mawr Turnpike Co.,* 153 Pa. 47, 25 A. 1105 (1893) (*quo warranto*); *Clearview Land Development Co., Inc. v. Commonwealth,* 15 Pa.Commw. 303, 327 A.2d 202 (1974) (action for abatement of public nuisance landfill operation in violation of Solid Waste Management Act); *Commonwealth v. Folcroft Landfill Corp.,* 1 Pa.Commw. 356 (1971) (injunctive relief against landfill operator for violation of The Solid Waste Management Act, The Clean Streams Law, The Air Pollution Control Act and The Fish Law).

we turn for guidance to the law of adverse possession which we deem to be an appropriate analogue.

■ It is well settled that one who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land in question for twenty-one years. Each of the aforementioned elements must exist for possession to confer title. *Conneaut Lake Park Inc. v. Klingensmith,* 362 Pa. 592, 66 A.2d 828 (1949).

■ However, it is also well established that a claim of title by adverse possession does not lie against Commonwealth property. *Commonwealth, Dept. of Transp. v. J.W. Bishop & Co.,* 497 Pa. 58, 439 A.2d 101 (1981); *Hostetter v. Commonwealth,* 367 Pa. 603, 80 A.2d 719 (1951); *Torch v. Constantino,* 227 Pa.Super. 427, 323 A.2d 278 (1974); *Fraver v. Vranicar,* 59 Pa.D. & C.2d 360 (Dauphin Co.1972). This is because the land is impressed with a public use or purpose, *Hostetter, supra; J.W. Bishop & Co., supra,* and because of the well-entrenched doctrine of *nullum tempus occurrit regi* ("time does not run against the King"). *J.W. Bishop, supra; Torch, supra.* This latter doctrine has its roots in the prerogative of the Crown. *See* 1 Blackstone, Commentaries* 247. Even privately owned property which has been dedicated to public use cannot thereafter be claimed by adverse possession. *J.W. Bishop, supra.* The only exception to this rule is where a political subdivision holds land which is not devoted to public use. *Torch, supra.*[6] We cannot imagine a greater public or governmen-

6. This rule appears to be consistent with that of other jurisdictions. *See, e.g., City of Gainesville v. Gilliland,* 718 S.W.2d 553 (Mo.App.1986) (title to land owned by municipality cannot be lost through adverse possession regardless of whether land held in a governmental or proprietary capacity); *In re College Point Industrial Park,* 72 A.D.2d 745, 421 N.Y.S.2d 258 (1979) (ownership by municipality of land under water cannot be lost through adverse possession if it is held in a governmental capacity; adverse possession may be claimed if land held by municipality in a proprietary capacity and statute does not prohibit alienability); *Lewis v. Village of Lyons,* 54 A.D.2d 488, 389 N.Y.S.2d 674 (1976) (land held by municipality in proprietary capacity may be claimed through adverse possession; parcel of land on which

tal purpose for holding land than to provide water service for the citizens served by appellant borough water authority here.

We see no reason why the doctrine of laches should succeed or prevail where an analogous claim of adverse possession against appellant would otherwise fail. The former defense rises no higher and is deserving of no greater protection than the latter. Moreover, were this matter controlled by statute toward the same result which we reach here, it would be consistent with the Statutory Construction Act. *See* 1 Pa.C.S.A. § 1922(5) Presumptions in ascertaining legislative intent. "In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: ... (5) That the General Assembly intends to favor the public interest as against any private interest."

We are not unmindful of the hardship which our disposition will work upon appellees. Still pending in the trial court is appellees' third-party action for damages against the real estate company which sold appellees the tracts of land involved in this dispute. Without commenting upon the viability of this third-party action which is not presently before us, it may be that appellees will obtain some relief on their claim.

Judgment vacated. Matter reversed and remanded consistent with this Opinion. Jurisdiction not retained.

building located and adjoining parcel to be used as parking lot successfully claimed from municipality through adverse possession); *Grand Lodge of Georgia, Independent Order of Odd Fellows v. City of Thomasville*, 226 Ga. 4, 172 S.E.2d 612 (1970) (no adverse possession against City or County regardless whether land held in governmental or proprietary capacity).