Joseph W. CROYLE, Jr., and Lizabeth B. Croyle, Husband and Wife, Appellees,

v.

Patrick W. DELLAPE and Bernadine Dellape, Husband and Wife, Appellants.

Superior Court of Pennsylvania.

Argued May 29, 2003.

Filed Sept. 4, 2003.

Frederick B. Gieg, Altoona, for appellants.

Terressa E. George, Altoona, for appellees.

BEFORE: ORIE MELVIN, LALLY-GREEN and BENDER, JJ.

OPINION BY BENDER, J.:

¶ 1 Patrick W. Dellape and Bernadine Dellape, husband and wife and the defendants below (the Dellapes), appeal from the November 14, 2002 order denying their post trial motion on the basis of the trial court's opinion and order dated July 15, 2002. In its July 15, 2002 order, the trial court granted relief to the plaintiffs below, Joseph W. Croyle, Jr. and Lizabeth B. Croyle, husband and wife (the Croyles), who had initiated the underlying action in ejectment against the Dellapes. We affirm.

¶ 2 A factual and procedural history follows. The Croyles own several lots in the plan known as Sylvan Hills in Frankstown Township, Blair County. The Croyles'

house is situated on one of these lots, and the other three lots they own in the plan are undeveloped. The lot upon which the Croyles' house is situated is in the shape of an upside down "L." The Dellapes' lot, upon which their house is situated, is a square-shaped lot that fits into the "L" of the Croyles' lot, or, in other words, is to the southwest of the Croyles' lot.[1] Larch Street runs east to west, and abuts the southeastern portion of the Croyles' lot and the southern portion of the Dellapes' lot. The Dellapes' house faces south toward Larch Street. In fact, the entirety of their lot frontage abuts Larch Street. The Croyles' house is north of the Dellapes' house, and faces east toward State Route 36, which runs north to south, perpendicular to Larch Street. The Croyles have two driveways leading from their house—one exits east onto State Route 36, and the other exits south onto Larch Street.

¶ 3 Larch Street is a sixty-foot wide "paper" street, which means it was never developed from the time the Logan Valley Land Company filed the plot plan for Sylvan Hills in March of 1906.[2] As the Honorable John K. Reilly, Jr., duly recognized, Larch Street "was never accepted by the Township and therefore since 21 years have passed since its dedication, the owners of property within the plan or subdivision retain private rights of easement by implication over street[s] of this nature." Opinion and Order, 7/15/02, at 1 (citing Estojak v. Mazsa, 522 Pa. 353, 562 A.2d 271, 274 (1989) ("[W]here a municipality fails to accept or open a dedicated street in a plan within twenty-years [sic], the owners of property within the plan or subdivi-

---

1. The Croyles purchased the lot upon which their house is situated on October 18, 1954. At that time, the lot was square-shaped and included the area of what is now the Dellapes' lot, which the Croyles carved out from the southwestern corner of their original lot.

2. The plot plan for Sylvan Hills is recorded in the Blair County Plot Book Volume No. 2, page 53. See Opinion and Order, 7/15/2002, at 1.

sion retain private rights of easement by implication over the unopened streets.")). Although Larch Street is sixty feet wide on paper, there is a significantly narrower gravel drive running down its middle.

¶ 4 As noted above, the entire frontage of the Dellapes' lot abuts Larch Street. The focus of this litigation involves the Dellapes' encroachment onto Larch Street. The Dellapes' concrete driveway extends approximately sixteen feet onto Larch Street, and several of the Dellapes' light posts, planters, and a portion of their fence are situated on Larch Street, beyond the front, or southern, boundary of their lot. The three other lots[3] owned by the Croyles are situated adjacent to each other and to the west of the Dellapes' lot. These other lots front Larch Street and are accessible only by Larch Street. *See* N.T. Trial, 10/29/01, at 25.

¶ 5 On November 6, 1998, the Dellapes filed a quit-claim deed purporting to transfer, to themselves, thirty feet (or half) of the width of Larch Street situated in front of their lot.[4] Thereafter, on June 29, 2000, the Croyles filed a complaint in ejectment against the Dellapes, in which they sought to enjoin the Dellapes from interfering with the Croyles', and other Sylvan Hills lot owners', private right to use the entire sixty-foot width of Larch Street in which all lot owners have an easement by implication. *See* Complaint in Ejectment, 6/29/00, at ¶ 13. The Croyles averred that the Dellapes' encroachments interfere with the use of the Croyles' other lots and has an adverse effect on the value of such lots because adequate street access to those lots is impeded. *Id.* at ¶ 14. The Croyles further claimed that despite their repeated requests to the Dellapes to remove the encroachments, the Dellapes refused to do so. *Id.* at ¶ 15.

¶ 6 The Dellapes filed an answer with new matter and a counterclaim[5] on July 21, 2000, in which they denied that there were any encroachments but, even if there were, such encroachments would not interfere with the use of Larch Street or diminish the value of the Croyles' other lots. *See* Answer, New Matter and Counterclaim, 7/21/00, at ¶¶ 13–14. The Dellapes admitted that, about seven to eight years prior, they erected a concrete driveway, concrete railings, plantings, and light posts on the disputed area; however, previously existing railings and posts, which had been erected by the lot's previous owner, Joseph H. Murray, existed in the same area in excess of twenty-five years.[6] *Id.* at ¶ 12. The Dellapes claim, *inter alia*, that they have record title to half of the sixty-foot width of Larch Street that abuts their lot (*i.e.,* the disputed area) and that the Croyles' easement by implication has been extinguished by Mr. Murray's purportedly adverse possession of the disputed area tacked onto the Dellapes' adverse possession of the disputed area, which, when combined, exceeds the statutory twenty-one year period necessary for adverse possession.

¶ 7 On October 29, 2001, the parties proceeded to a non-jury trial before the Honorable Norman D. Callan. However, Judge Callan did not render a decision for the following reason. The Croyles' attor-

---

3. We shall at times refer to the Croyles' three undeveloped lots that abut Larch Street as the "other lots."

4. The area of the Dellapes' encroachment onto Larch Street is sometimes hereinafter referred to as the "disputed area."

5. The issues presented in the Dellapes' counterclaim are not relevant in this appeal.

6. Mr. Murray purchased the property in 1957 and then the Dellapes purchased the property on March 4, 1983. Deposition of Joseph H. Murray, 10/29/01, at 9, 57.

ney was active in opposing the retention of Judge Callan in the November 2001 election. Judge Callan was not re-elected to the bench. Accordingly, on November 26, 2001, Judge Callan issued the following order recusing himself from the case:

> After a review of the record and in recognition of the recent election in which the undersigned Judge was not retained in office and it being widely known that one of the Attorneys involved in this case was outspoken in his role opposing retention; it is,
>
> ORDERED, DIRECTED AND DECREED that [Judge Callan] hereby recuses himself from this case in order to avoid the appearance of a conflict of interest.

Order, 11/26/01.

¶ 8 In January of 2002, after Judge Callan left the bench, Judge Reilly was appointed to decide the case on the basis of the record, including transcripts of the trial and Mr. Murray's deposition. Judge Reilly issued an opinion and order on July 15, 2002, in which he rendered a decision granting relief to the Croyles and ordering the Dellapes to remove any and all obstructions from Larch Street.

¶ 9 The Dellapes filed a timely motion for post trial relief on July 23, 2002, requesting either a judgment in their favor or a new trial. Judge Reilly issued an opinion and order on November 14, 2002, in which he denied the Dellapes' motion for post trial relief. On December 5, 2002, the Dellapes filed a praecipe for entry of judgment and, on the same date, filed a notice of appeal to this Court.

¶ 10 We note initially that the Dellapes purport to appeal from the November 14, 2002 order denying their post trial motions; however, "an appeal properly lies from the entry of judgment, not from the denial of post-trial motions."

*Hall v. Jackson,* 788 A.2d 390, 395 n. 1 (Pa.Super.2001). In any event, we conclude that this appeal was timely taken following post trial motion practice, and we shall treat this appeal as a timely appeal from Judge Reilly's decision of July 15, 2002. *See* Pa.R.C.P. 1058 ("The trial of actions in ejectment by a judge sitting without a jury shall be in accordance with Rule 1038"); Pa.R.C.P. 1038 (indicating rules of civil procedure applicable); Pa. R.C.P. 227.1 (indicating post trial motion practice is appropriate following a non jury trial in an action at law pursuant to Pa. R.C.P. 1038); Pa.R.C.P. 227.4 (permitting party to praecipe for entry of judgment on judge's decision following ruling on post trial motion); 1 G. RONALD DARLINGTON, ET AL., PENNSYLVANIA APPELLATE PRACTICE § 903.7 (2d ed. Supp.2002) (describing taking of appeal following post trial motion practice and indicating, *inter alia,* that an appeal filed while a post trial motion is pending before trial court will be considered premature and any party may praecipe for entry of judgment on trial judge's decision after post trial motion has been decided).

¶ 11 Next, we note our standard and scope of review which is:

> limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be

taken as true and all unfavorable inferences rejected.

*Behar v. Frazier,* 724 A.2d 943, 946 (Pa.Super.1999). Since this is an action in ejectment, plaintiffs carried the burden of establishing [their case] by a preponderance of the evidence. . . .

*Anderson v. Litke Family Ltd.,* 748 A.2d 737, 738–39 (Pa.Super.2000).

■ ¶ 12 The Dellapes raise six issues in this appeal, which we shall address in the order presented in their brief. In their first issue, the Dellapes argue that an action in ejectment, which is an action at law, is the improper form of a suit seeking to recover use of an easement, and the appropriate way for the Croyles' to have proceeded was by an action in equity. Dellapes' brief at 9. We conclude that the Croyles could have filed either an action in ejectment, as they did, or a suit in equity. In either case, the trial court's order requiring the Dellapes to remove their encroachments from Larch Street, in which the Croyles and other lot owners in the Sylvan Hills plan have an easement by implication, was proper.

¶ 13 In *Williamstown Borough Auth. v. Cooper,* 404 Pa.Super. 516, 591 A.2d 711 (1991), a municipal water authority brought an action in ejectment against several property owners, including one owner who was constructing a house that encroached on property in which the water authority had a right of way. In that case we stated: "An action in ejectment may be brought where the property interest claimed to be encroached upon is an easement or right of way." *Id.* at 714 n. 4. Other cases presenting similar circumstances have been brought in equity. For example, in *Kinzey v. Marolt,* 288 Pa.Super. 426, 432 A.2d 234 (1981), the appellant, Kinzey, brought an action in equity to compel the appellees, the Marolts, to remove mobile homes and power lines that

the Marolts had erected, which encroached on the southern part of a street that had never been opened or dedicated. We concluded that Kinzey, a lot owner in the same plan, had an easement by implication over the entire length and entire fifty-foot width of the street, as laid out, and that he could "open and improve [the] same at anytime, even though the portion of [the street] here in question, [had] never been opened or dedicated to public use." *Id.* at 235–36. Similarly, in *Mellace v. Armstrong,* 469 Pa. 326, 365 A.2d 850 (1976), the plaintiffs brought a suit in equity to compel the defendants to remove a fence that the defendants had erected across an alley existing between the plaintiffs' property and the defendants' property, in which the plaintiffs had an easement. Although *Kinzey* and *Mellace* demonstrate that the Croyles could have brought an action in equity to compel the Dellapes to remove their encroachments onto Larch Street, *Williamstown Borough Auth.* demonstrates that an action in ejectment is also a proper form of action when the "property interest claimed to be encroached upon is an easement or right of way," as in the instant case. *Id.* at 714 n. 4.

¶ 14 The Dellapes also raise two points within the argument portion of their first issue that we shall address briefly. They argue that, had the case been brought in equity, an equity court could not have ordered the Dellapes to remove their encroachments because doing so would essentially be ordering a "useless act," which a court in equity could not do. In support of this argument, the Dellapes contend that, despite their encroachments, there exists forty-eight feet of width of Larch Street in front of their lot that the Croyles could use to access their other three lots abutting Larch Street. The Dellapes also argue that, since twenty-one years have

passed and the Township failed to open the portion of Larch Street at issue, the Township would have to take the street by eminent domain in order to open it at this point. These arguments are without merit. First of all, the Croyles and the other lot owners in the Sylvan Hills plan have an easement by implication to use the entire sixty foot width of Larch Street as plotted. *See Kinzey*, 432 A.2d at 235–36. Moreover, the Croyles and other lot owners have this right to use the easement at the present time, regardless of whether the Township decides to take the street by eminent domain at a future time. The Dellapes' arguments are specious.

¶ 15 In their second issue, the Dellapes argue that the trial court should have concluded that the Croyles abandoned the easement because they permitted trees and vegetation to grow over it and placed a pile of dirt and debris in front of their undeveloped lots in the middle of Larch Street, thereby making it impassable. Dellapes' brief at 11–13. The Dellapes rely solely on *Hatcher v. Chesner*, 422 Pa. 138, 221 A.2d 305, 308 (1966), in support of this argument.

¶ 16 In *Hatcher*, our Supreme Court reversed a decree in equity that enjoined the defendant from obstructing a right of way over his land. *Id.* at 306. *Hatcher* is distinguishable from the instant case for several reasons. First, *Hatcher* dealt with an interest in an easement that was created between two plots by a deed; therefore, the Court examined the criteria for abandonment of an easement created by deed. Second, the facts in *Hatcher* are readily distinguishable from those in the instant case. The easement in *Hatcher* was encompassed within an eighteen-foot long garage-type structure with two double doors at each end. One of the double doors remained nailed shut for years by the plaintiff, thereby evidencing the plaintiff's

intent to abandon the easement. Plaintiff also allowed a large tree to grow in an area that impeded opening of the double doors on his side of the easement.

¶ 17 In *Hatcher*, our Supreme Court stated:

> If the owner of the easement by his own affirmative act renders use thereof impossible, or if he obstructs it in a manner that is inconsistent with its further enjoyment, the easement will be deemed to have been abandoned, even in the absence of adverse use on the part of the owner of the servient tenement.

*Id.* at 308. The Court concluded that the plaintiffs had taken affirmative acts that were "sufficiently inconsistent with further use of the easement to constitute an abandonment thereof," which acts included nailing the garage door shut to the structure that encompassed the easement and permitting a large tree to grow in front of the easement that interfered with opening the garage door. *See id.* at 308.

¶ 18 In the instant case, there are no such structures erected by the Croyles or other impediments that would evidence the Croyles' intent to abandon their right to use Larch Street. The Dellapes failed to establish abandonment on the part of the Croyles based merely on the Croyles' placement of a pile of dirt in front of their undeveloped lots and vegetation that has grown around Larch Street. The Dellapes failed to show that the vegetation "obstructed use of the easement to a material extent" or that the Croyles' took affirmative acts inconsistent with their further use of the easement and thereby constituting their abandonment thereof. *See id.* Instead, we agree with the Croyles that the instant case is more akin to *Sabados v. Kiraly*, 258 Pa.Super. 532, 393 A.2d 486 (1978), than it is to *Hatcher*. In *Sabados*, we concluded that an easement created by prescription could not be terminated for

mere non-use and the party seeking to terminate another's right to use the easement must present evidence demonstrating some conduct by the holder of the right that manifests his intent to abandon and permanently terminate his right to use the easement. In *Sabados*, we further concluded that the growth of brush and saplings on a right of way area is not an affirmative act evidencing an intent to abandon the right of way; rather, the growth of such vegetation results from merely doing nothing. *Id.* at 488. Evidence of abandonment must consist of affirmative acts such as placement of a barrier. *Id.* We noted the distinction in *Hatcher* whereby the holder of the right barricaded the garage door, which was the entrance to the right of way, with nails and planted or permitted a large tree to grow and obstruct use of the easement to a material extent. *Id.* Such purposeful acts constituted evidence of the holder's intent to close the right of way, to give it up, or abandon it. *Id.* The obstructing tree merely added to the barricade the holder created intentionally by barricading the garage door. *Id.*

¶ 19 As in *Sabados*, the instant case presents circumstances merely evidencing the Croyles' non-use of the right of way because their other lots abutting Larch Street were undeveloped. *Id.* (indicating holders' non-use of easement related to fact that land accessed by easement was not being used). As the Croyles indicated, the pile of dirt and vegetation are easily removable when, and if, the time comes to develop their other lots that abut Larch Street. Moreover, the pile of dirt was temporary and accumulated as a result of ground removed from the lot upon which the Croyles' house sits. In all, there was no evidence that the Croyles' acts of placing the dirt pile on Larch Street or of allowing the vegetation to grow were affirmative acts indicating their intent to aban-

don their rights to use the full width of Larch Street as plotted. The Dellapes' abandonment argument fails.

¶ 20 In their third issue, the Dellapes argue that they are entitled to a new trial because Judge Callan's recusal followed by appointment of Judge Reilly after trial resulted in a violation of Pa.R.C.P. 1038(c). The Dellapes further contend that it was "almost impossible" for Judge Reilly to render a fair decision because he did not preside over the trial and did not have an opportunity to assess the credibility of the witnesses. These arguments are without merit.

¶ 21 The Dellapes cite Pa.R.C.P. 1038(c), which indicates that, in a trial without a jury, the trial judge "shall render a decision within seven days after the conclusion of the trial except in protracted cases or cases of extraordinary complexity." Pa. R.C.P. 1038(c). As the Croyles correctly recognize in their brief, the Dellapes failed to object to the recusal of Judge Callan and reassignment of the case to Judge Reilly at any time prior to the filing of their post trial motion. *See* Croyles' brief at 15. Moreover, the seven day time period indicated in Rule 1038(c) had passed by the time Judge Reilly was appointed to review the record and render a decision, again, without objection from the Dellapes. It was not until after Judge Reilly issued a decision adverse to the Dellapes did they object to his appointment in their post trial motion. Accordingly, their objection was untimely according to our rules for post trial motion practice. *See* Pa.R.C.P. 227.1.

¶ 22 Furthermore, Judge Reilly addressed this issue as follows in his opinion and order dated November 14, 2002:

This Court was assigned as a visiting Judge to determine the matter based on the transcripts of the hearing and depositions. Following oral argument and

briefs of the parties, and a view of the premises, this Court entered its Opinion and Order as set forth above [dated July 15, 2002]. [The Dellapes] now seek post-trial relief based on their allegation that since this Court did not personally observe the witnesses who testified, the credibility of said witnesses could not be accurately assessed. However, this Court notes that no objections to the method of determining this matter following Judge Callan's leaving the bench were raised prior to the Motion for Post–Trial Relief and further, that the witness whose testimony primarily influenced the above Opinion and Order [dated July 15, 2002] was presented by deposition such that even had Judge Callan proceeded to this matter, he also would not have personally observed the witness.

Opinion and Order, 11/14/2002, at 1. The witness Judge Reilly referred to here is Joseph H. Murray, the Dellapes' predecessor in interest, who testified by deposition, as further detailed below, that he had no intent to adversely possess the disputed area. This testimony and other testimony presented by Mr. Murray destroyed the Dellapes' claim of adverse possession, since they needed to tack Mr. Murray's possession onto their own to meet the required twenty-one year period necessary for adverse possession. This issue is described further *infra*, but noted here only to explain that the Dellapes' claim that Judge Reilly was deprived of the benefit of judging the witness's credibility is without merit, since Judge Callan also did not have the opportunity to observe Mr. Murray testify, as his testimony was admitted by deposition.

■ ¶ 23 Moreover, we conclude that this case presented unique circumstances whereby the original judge was forced to recuse himself and a new judge had to be appointed to render a decision. We conclude that the circumstances in this case fit within the exception of Rule 1038(c), whereby the seven-day limit may not be feasible where a case is protracted or complex. *See, e.g., Ecksel v. Orleans Const. Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987) (concluding nine-month delay between first trial and court's decision not prejudicial and case complexity excused delay under exception in Rule 1038(c)). *See also Pearlman v. Newburger*, 117 Pa.Super. 328, 178 A. 402, 405 (1935) (examining cause of delay of court's decision under old rule requiring such decision within 60 days after trial and concluding, *inter alia*, that neither party objected to delay prior to decision, which parties knew was delayed due to judge's illness, and concluding further the legislature did not intend result whereby entire trial would have to be repeated for failure to file decision within 60–day period irrespective of cause for delay). In sum, the instant case presented complex issues and unique circumstances, including the trial judge's recusal and appointment of a new judge to render a decision, thereby providing a reasonable excuse for the delay. Moreover, the Dellapes suffered no prejudice from the delay and, in fact, failed to object to the delay in a timely fashion.

■ ¶ 24 In their fourth issue, the Dellapes argue that the trial court erred by failing to tack Mr. Murray's period of ownership to their own for purposes of meeting the twenty-one year requirement for adverse possession. The Dellapes assert that certain broad, encompassing language in the deed from Mr. Murray to the Dellapes upon the latter's purchase of the property in 1983 includes the disputed area. Dellapes' brief at 14. This issue is also without merit.

¶ 25 The Dellapes argument is premised on their assertion that Mr. Murray's en-

croachments onto Larch Street constituted adverse possession of the disputed area. However, Judge Reilly concluded that Mr. Murray did not possess the disputed area adversely. The record amply supports this conclusion.

¶ 26 We first note that "[o]ne who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years." *Flannery v. Stump*, 786 A.2d 255, 258 (Pa.Super.2001).

> Additionally, where, as here, the claimant of the disputed land has not possessed the land for the required twenty-one year period, the claimant must tack its predecessor's period of adverse possession for adverse possession to exist. In order for possession to be tacked, there must be privity between the successive occupants of the property. Privity refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law. However, a deed does not itself create privity between the grantor and the grantee as to land not described in the deed but occupied by the grantor in connection therewith, although the grantee enters into possession of the land and uses it in connection with that conveyed. Rather, acceptance of a deed describing boundary lines confines the premises conveyed to the area within the boundaries, and such a deed does not convey inchoate rights acquired by incompleted adverse possession. Each predecessor must have claimed title to the property in dispute, and have purported to include it.

*Watkins v. Watkins*, 775 A.2d 841, 846–47 (Pa.Super.2001) (citations omitted).

¶ 27 It is clear that Mr. Murray did not intend to claim title to the disputed area. The trial court reached this conclusion in reliance upon Mr. Murray's deposition testimony, which established the following. Mr. Murray purchased the lot in 1959 and built a house thereon. Deposition of Joseph H. Murray, 10/9/01, at 9. At the time the house was built, the portion of Larch Street in front of it was a dirt road. *Id.* at 13. Sometime in the early 1960's, without the benefit of a survey, Mr. Murray erected a wooden fence and lightpost, installed a driveway, short retaining wall, and planted some bushes in front of the house. *Id.* at 11–13, 38. He did not realize that the fence, lightpost, and retaining wall encroached onto Larch Street until one or two years after such items were erected, which occurred sometime in 1962 when he discovered a surveyor's stake placed in an area that demarcated one of the front corners of his lot, as plotted. *Id.* at 37–38. Mr. Murray stated that he had no intention to interfere with or obstruct the sixty-foot width of Larch Street and, if the Township or any other party for whatever reason decided to open Larch Street, Mr. Murray testified that he would have no objection to removal of the encroachments he had placed thereon. *Id.* at 22, 39. He expected that, if Larch Street were opened, that his frontage would change. *Id.* at 23. Mr. Murray never attempted to make a claim of ownership by deed or any other means to the area of Larch Street upon which he encroached. *Id.* at 56. Accordingly, the Dellapes' claim of ownership of the disputed area by adverse possession must fail in that their predecessor did not display the requirements for adverse possession and they could not tack his period of possession on to their own to establish the twenty-one year statutory period required for an adverse possession claim.

¶ 28 In their fifth issue, the Dellapes argue that the Croyles' action in ejectment was barred by the statute of limitations provided in 42 Pa.C.S. § 5530,

which indicates that an action for possession of real property must commence within twenty-one years. Dellapes' brief at 15. Although it is clear that the Croyles' action was timely because they initiated it well within twenty-one years from the date the Dellapes filed the quit-claim deed purporting to transfer ownership of the disputed parcel to themselves, we need not delve into a full analysis of this issue because the Dellapes failed to raise this statute of limitations defense in their new matter. Rather, the first time the Dellapes raised this defense was in their post trial motion. As a general rule, a statute of limitations defense must be raised in new matter or else it is waived. *See* Pa.R.C.P. 1030(a); *Thompson v. Southeastern Pennsylvania Transp. Auth.,* 280 Pa.Super. 193, 421 A.2d 471, 474 (1980).

¶ 29 In their sixth and final issue, the Dellapes argue that the Croyles could not sustain their action in ejectment because they had no immediate plans to develop their three other lots that front Larch Street and, therefore, had no immediate right to the disputed portion of Larch Street.

> Ejectment is a possessory action only, and can succeed only if the plaintiff is out of possession, and he has a present right to immediate possession. A court only has jurisdiction over an Action in Ejectment if the defendant possesses the land and the plaintiff has the right to possess.

*Siskos v. Britz,* 567 Pa. 689, 790 A.2d 1000, 1006 (2002) (citations and quotation marks omitted). Moreover, as noted above, "[a]n action in ejectment may be brought where the property interest claimed to be encroached upon is an easement or right of way." *Williamstown Borough Auth.,* 591 A.2d at 714 n. 4. We agree with the trial court's conclusion that the Croyles' assertion of their right to use the entire sixty-foot width of Larch Street was immediate in nature. Judge Reilly reasoned: "In view of [the Dellapes'] claim of adverse possession [the Croyles] must assert their rights in and to the easement before the expiration of the time necessary for [the Dellapes'] claim of adverse possession to ripen." T.C.O., 7/15/02, at 2. We agree.

¶ 30 The Dellapes sought to establish title to the disputed portion of Larch Street through adverse possession and by issuing a quit-claim deed purporting to transfer the disputed area to themselves. Had the Croyles waited to assert their rights to the disputed area until the time they were ready to develop their three lots, the time period for adverse possession may have accrued in favor of the Dellapes, resulting in the Croyles' loss of their right to use the entire width of Larch Street as plotted. Moreover, the Dellapes' argument that the Croyles do not have an immediate right since they have no present plans for development of their Larch Street lots evidences the Dellapes' confusion between an "immediate right," which is necessary for an action in ejectment, with an "immediate need" to assert such right. The fact that the Croyles' have no plans to develop their lots does not change the fact that they have an immediate right to access those lots through Larch Street, in which they, and the other owners in the Sylvan Hills plan, have an easement by implication to the entire sixty-foot width thereof, as plotted.

¶ 31 For the foregoing reasons, we affirm the order denying post trial relief dated November 14, 2002.

¶ 32 Order affirmed.